The Bank for Savings in the City of New York et al., Respondents, *v.* William R. Grace, Mayor, etc., of the City of New York, et al., Appellants.

" City stock " of the city of New York, held by the commissioners of the sinking fund, is not an indebtedness of the city within the meaning of the constitutional provision (State Const., art. 8, § 11), which prohibits a city of over one hundred thousand inhabitants, whose present indebtedness exceeds ten per centum of the assessed valuation of its real estate subject to taxation, from becoming indebted in any further amount. The

indebtedness referred to is one to be met in the future by taxation, and city stocks so held are not debts which the municipality can be called upon to pay. (§ 9, chap. 99, Laws of 1812; chap. 225, Laws of 1845, §§ 102, 119, chap. 335, Laws of 1873; chap. 383, Laws of 1878.)
The history of the municipal legislation in said city in respect to the sinking fund given.

(Argued March 23, 1886; decided April 30, 1886.)

Appeal from judgment of the General Term of the Court of Common Pleas in and for the city and county of New York, entered upon an order made February 1, 1886, affirming a judgment in favor of plaintiffs, entered upon an order overruling a demurrer to the complaint herein.

This action was commenced by certain individuals and moneyed corporations, citizens and tax payers of the city of New York, and holders of bonds and stocks issued by it. They sue on behalf of themselves and all others similarly situated, and by their complaint show that the assessed valuation of real estate of the city, subject to taxation for the year 1884, was $1,119,761,597, and for the year 1885, $1,168,443,137, and that ten per cent of these valuations is respectively, $111,976,160, and $116,844,314; that its funded indebtedness is already upwards of $126,000,000, and, therefore, as they allege, in excess of the indebtedness allowed by law; but it also appears by the complaint that upwards of $34,000,000 of this indebtedness is held by "the commissioners of the sinking fund for the redemption of New York city stock," and that the balance of indebtedness is at either estimate at least $19,000,000 less than ten per centum of the valuation of real estate above referred to; that the defendants, other than the mayor, compose the commissioners of the sinking fund, and are about to issue bonds of the city to the amount of $2,000,000 for the purpose of raising money for the dock department. The plaintiffs prayed that the defendants be enjoined from issuing these bonds or doing any thing to increase the debt or liability of said city. A preliminary injunction pursuant to that prayer was obtained. The defendants demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action. The

Special Term continued the injunction and overruled the demurrer. Its decision was affirmed by the General Term, and the present appeals were then brought.

*E. Henry Lacombe* and *Charles E. Miller* for appellants. The assets of the city are not to be deducted from the apparent gross total of indebtedness in determining whether its indebtedness is in excess of the constitutional limitation. (*Scott* v. *City of Davenport*, 34 Iowa, 208 ; *City of Council Bluffs* v. *Stewart*, 51 id. 385.) The word " indebtedness " in the constitutional amendment is to be taken in its ordinary significance or meaning. (Concurrent Resolution, Statute Book of 1884, 739, Worcester's Dict.) A debt is a sum of money due from or owing by one person to another. (3 Bl. Com. 154 ; *Newell* v. *People*, 3 Seld. 124 ; *Leggett* v. *Bk. of Sing Sing*, 24 N. Y. 283 ; Jacob's Law Dict., word " Debt.") Although the purchased stocks may be held by the commissioners of the sinking fund as collateral security, nevertheless they do not thereby constitute an indebtedness. (Colebrook on Coll., § 2 ; *In re Loder*, 4 Ben. 305, 328.)

. *Simon Sterne* for respondents. The sinking fund commissioners are trustees of an express trust, who, in contemplation of law, hold in their hands money, proceeds of revenues assigned and pledged to such trustees. (Laws of 1812, chap. 99, § 9 ; 2 Hoffman's Laws relating to the city and county of New York, 754, 759 ; Corporation Ord. Revision, 1845, p. 211 ; Rev. Ord. 1859, 190 *et seq. ;* Rev. Ord. 1866, 200 *et seq. ;* Rev. Ord. 1880, 31 *et seq.*) All the purchases of stock by the sinking fund commissioners are investments, be they city stock, United States stock or State stock, and are to be treated upon the same basis. (Bouvier's Law Dict. [15th ed.] 642 ; Worcester's Dict., " Sinking Fund.") The purchases of city bonds or stock by the sinking fund commissioners are not extinguishments, cancellations or redemptions of such stock or bonds, but are held for investment of the fund. (Laws of 1878, chap. 383 ; Laws of 1882, chap. 410, §§ 171–177, 191–2,

144, 146.) The property in the hands of sinking fund commissioners, such as the sinking fund commissioners of the city of New York, is clothed with the character of private property, and is juridically disassociated from and to some degree adversely to the creator of the trust. (20 Parl. Reg. 1786; Price on the Public Credit [7th ed. 1812], 303, 314; 3 Works of Alexander Hamilton by J. C. Hamilton, 1851, 503; 2 Executive Doc'ts, 28th Congress, 1st Session, 275, prepared by Jonathan Elliott; 4 Max Wirth National Ockonomie, 678; Garnier's Traite de Finances, 1862, 247; *People, ex rel. Hopkins,* v. *Bd. Sup'rs of Kings Co.,* 52 N. Y. 563.) The sinking fund of the city of New York is not only a fund for the redemption of the city debt in the hands of trustees by an express trust, but it is a fund which is mortgaged and pledged in various orders of priority, to different creditors, and is, therefore, inviolable in every sense, and not available for any purpose, by the city of New York, except in the strict fulfillment of this pledge. (*Bd. of Liq. of City Debt* v. *Mun. No.* 1, 6 La. Ann. 21; *Brooklyn Park Com'rs* v. *Armstrong,* 45 N. Y. 246; *Ogden* v. *Saunders,* 12 Wheat. 213; *Green* v. *Biddle,* 8 id. 84; *Van Hoffman* v. *City of Quincy,* 4 Wall. 552; *Bronson* v. *Kinzie,* 1 How. 316; *Pallairette's Appeal,* 67 Penn. 479.) Payment of money into a sinking fund is not *pro tanto* payment of the debt, for which the sinking fund is provided. (*Un. and C. P. Sink. T. Cas.,* 99 U. S. 700, 718, 719.) The constitutional amendment of January 1, 1885, does not in terms, nor by any reasonable interpretation, permit the amount held by the sinking fund commissioners to be deducted from the city debt, even if the court were to hold that the property of the sinking fund were an asset of the city. (*City of Council Bluffs* v. *Stewart,* 51 Iowa, 385; *Scott* v. *City of Davenport,* 34 id. 208; *Gatch* v. *City of Des Moines,* 63 id. 721; *French* v. *City of Burlington,* 42 id. 498, 614; *Sackett* v. *City of Albany,* 88 Ind. 473; *S. C.,* 45 Am. Rep. 467; *Prince* v. *City of Quincy,* 105 Ill. 138; *S. C.,* 44 Am. Rep. 785; *Grant* v. *City of Davenport,* 36 Iowa, 196; *City of Springfield* v. *Edwards,* 84 Ill. 626; *Dively* v. *City of Cedar Falls,* 27 Iowa, 227; *Nat. State Bk.* v.

*Ind. Dist. No.* 39, 39 id. 490; *McPherson* v. *Foster,* 43 id. 48 ; *Mosher* v. *Ind. School Dist.,* 44 id. 122 ; *Cummings* v. *Fitch,* 40 Ohio St. 56; *City of Erie,* 91 Penn. 398; *Law* v. *People,* 87 Ill. 385 ; *Prince* v. *City of Quincy,* 105 id. 138, 215 ; *Buchanan* v. *Litchfield,* 102 U. S. 278; *Litchfield* v. *Ballou,* 114 id. 190 ; *Un. P. R. R. Co.* v. *Buffalo Co.,* 9 Neb. 453; *Sackett* v. *New Albany,* 88 Ind. 473 ; 45 Am. Rep. 467 ; *Bk. of Columbus* v. *Hines,* 3 Ohio St. 1; 1 Banks' Rev. St. [5th ed.] 936.)   Any interference with the right of the use of private property is as much the taking of private as the actual appropriation would be, and without compensation, as provided by the Constitution, is an act of spoliation.   (*People* v. *Marks,* N. Y. Week. Dig., Oct. 16, 1885, 122.)   It was the clear intent of the people and of the legislature, in enacting the constitutional amendment of January 1, 1885, to limit the city debt, without reference to the amount held by the sinking fund commissioners.   (*Haworth* v. *Overod,* 6 Q. B. 307; 1 T. R. 52; *Buchanan* v. *Litchfield,* 114 U. S. 190 ; Potter's Dwarris, 215.)   The plaintiffs have sought the proper remedy to protect their rights against the act threatened by the sinking fund commissioners and the officers of the city government in impairment thereof.   (Laws of 1881, chap. 531 ; Code of Civ. Pro., § 1925 ; *Sackett* v. *City of Albany,* 45 Am. Rep. 472 ; Dill. Mun. Corp., § 914; *City of New London* v. *Brainard,* 22 Conn. 552; *Webster* v. *Town of Harwinton,* 32 id. 131; *Colton* v. *Hanchett,* 13 Ill. 615; *Barr* v. *Deniston,* 19 N. H. 170; *Mayor* v. *Gill,* 31 Md. 375; *Merrill* v. *Plainfield,* 45 N. H. 126; *Roberts* v. *Mayor, etc.,* 5 Abb. 41; *Willard* v. *Comstock,* 58 Wis. 568; *S. C.,* 46 Am. Rep. 657 ; *Att'y-Gen'l* v. *Wilmington,* 2 Del. Ch. 576.)

Danforth, J. The question to be determined is, whether or not the "stock or fund created by the corporation of the city of New York," and held by "the commissioners of the sinking fund," can be brought within the purview of that provision of the Constitution on which alone the plaintiffs rely, and which declares that no city "of over one hundred thousand inhabitants, whose

present indebtedness exceeds ten per centum of the assessed valuation of its real estate subject to taxation, shall be allowed to become indebted in any further amount, until such indebtedness shall be reduced within such limit." (Art. 8, § 11, N. Y. Const. as amended November 4, 1884.) We think it plain that the indebtedness here referred to is an indebtedness to be met in the future by taxation, for (1) before its possible limit can be defined, the value of the real estate subject thereto must be ascertained. (2.) By the express words of the provision, water bonds issued for a fixed term are not to be included, but a sinking fund must be created "for their redemption." (3.) So the issue of certificates of indebtedness or revenue bonds in anticipation of, and payable out of the taxes for the current year, is permitted. The mischief to be prevented was the creation of an excessive debt for local improvements, or public works, or the loaning of municipal credit, so payable that the burden should not fall upon those who contracted the obligations, or on their revenues, but on posterity. The judgment appealed from stands upon the idea that the debt of the city of New York is already in excess of the measure allowed by the Constitution, and it must prevail if the city stocks held by the commissioners of the sinking fund are so circumstanced that their satisfaction can directly or indirectly involve taxation, or, putting the proposition in another form, if the city stocks held by the commissioners are debts which the municipality can be called upon to pay. This depends upon the construction and effect of the statutes and ordinances relating to the sinking fund. The first to which our attention is called is a statute entitled "An act to regulate the finances of the city of New York," passed June 8, 1812. (Chap. 99, § 9.) It authorized the city of New York to create a sinking fund to pay the principal, and pledged the credit of the State to provide for the interest, of a public debt. This was followed by an ordinance of the mayor, etc., of the city of New York, passed August 9, 1813 (page 105, quoted as from the manuscript ordinances of New York, passed during the mayoralty of DeWitt Clinton), entitled "a law making provision for the redemption of the New York city stock."

The preamble, which in this case at least may be said to state the ground and cause of making it, and to be "a key to open the minds of the makers of the act," so that what was really intended by it may be seen, declares that: Whereas, it is highly useful to establish a fund out of which purchases of the New York city stock may, from time to time, be·made whenever the same can be done at par or the true value thereof, whereby the said stock will be prevented from depreciating, and the redemption of the same will be regularly progressing, and then enacts that all moneys derived from certain specified sources, "·and all such other sources of revenue or sums of money as the said corporation shall hereafter think proper to appropriate to that purpose, shall and hereby are firmly and inviolably pledged, appropriated and applied to and constitute and form the fund for the purpose aforesaid until the final redemption of the whole of the said stock."

Whether we give these words their ordinary and common meaning, or define the completed act according to its legal signification, it is difficult to find that those who used them had any other object in view than the extinction of the stock, to the purchase of which the funds were to be applied. The fund was established by the party who created or made the stock; the utility anticipated by that party was, *first*, redemption so far as the money in hand would go, and, *second*, the maintenance of the market value of the unredeemed stock. Re-purchase of notes or other evidences of debt, by the issuer from the holder, is redemption, and is equivalent to and has the force of payment. Here the whole fund is to be so applied until final redemption of the whole stock — which in this connection means until the maturity of the stock, when by its terms it is no longer an executory obligation. We find nothing in the other provisions of the statute to conflict with this view. The purchases were to be made under the direction of the mayor, recorder, comptroller, and treasurer of the city, and the chairman of the finance committee, for the time being, who are denominated as the "commissioners of the sinking fund for the redemption of the New York city stock." They

were authorized to invest all the moneys of the fund in the purchase of the city stock, or if that could not be had, then as they may see fit, in the stock of the United States or in bank stock, but these last were to be sold " and the proceeds invested in city stock" when, in the opinion of the commissioners, it could be done without injury. In the meantime the moneys constituting the fund were to be deposited in the treasury to their credit, "kept separate and distinct from other moneys of the corporation," and to be drawn on their warrant when required "for such purchase and investments." These stocks of whatever kind, when purchased, were to be transferred to the treasurer of the city "in trust for the sinking fund for the redemption of the city stock," to be held by him until its final redemption, and the interest of the stock so purchased is "at each quarterly payment thereof, and the interest and dividends on the other stocks to be carried to the credit of the sinking fund," and thereafter to form part of it.

In 1817 (Ordinances, p. 69) a similar ordinance was enacted, with some change in the detail, but none in the preamble or the expression of its general purpose. It did not allow the purchase of bank stock, the treasurer was no longer to act as trustee, but the city stock bought by the commissioners "was to be held by them until the final redemption of the city stocks." In 1821 (Ordinance, chap. 32) the commissioners were allowed to invest in State stocks, or stock of the United States, but preference was at all times to be given by them to the purchase of New York city stock, if it could be obtained at a reasonable rate. Although ordinances under the same title were enacted in 1823 (Chap. 31), in 1827 (Chap. 31), no material change was made. In 1834 (Chaps. 9, 10) the clauses of former ordinances were rearranged, and it was declared that the powers conferred on the commissioners should be so construed as to render it imperative on them at all times to give preference to the purchase of the city stock, if it could be procured at a reasonable rate, and they were permitted in their discretion to sell such stock of the United States, or of this State, as they held, and purchase any of the city stock at such prices as they might judge best for the public interest.

In 1839 the law was re-enacted and a clause added, by which the term "city stock," therein used, was declared to mean any stock or fund created by the corporation of the city of New York. (§ 11, tit. 1, chap. xvii, of Corporation Ordinances.) Up to and including this ordinance it was made the duty of the commissioners to hold the city stock purchased by them until its final redemption. In 1844 (Corporation Ordinances, p. 211) these provisions and some additional features were included in a new ordinance then passed, section 4 of which (Tit. 4) declares that the commissioners "shall, from time to time, invest the moneys which shall constitute the sinking fund for the redemption of the city debt, or as much as they can, in the purchase of stocks created by the corporation of the city of New York, at the market price, not exceeding the par value thereof; and if, at any time, such investments cannot be made at par, then the said commissioners shall be authorized to invest the said moneys, or such part thereof as they may see fit, either in the purchase of the said stock, or the stock of the State of New York, or the stock of the United States, notwithstanding such stocks may be above the par value thereof."

Section 5 makes it imperative to give preference to city stock if it can be procured at a reasonable rate.

Section 6 permits them to sell the United States or State stock and invest the proceeds in city stock, and section 7 provides that if they "shall have invested any part of the said fund in the purchase of city stock, and shall at any time thereafter be enabled to purchase any of the city stock which shall be by its terms redeemable at an earlier day, they may forthwith sell the same and invest the net proceeds in such other city stock, if in their opinion such exchange shall be desirable and beneficial to the public interest," and it also declares (§ 10, id.) that "the city stock which shall be purchased by the commissioners shall not be canceled by them until the final redemption of the said stock, and all interest accruing thereon shall regularly be carried to the said sinking fund for the redemption of the city debt."

We are referred to no ordinance of later date which in any

material particular changes the scheme which the ordinance of 1844 re-enacts or establishes; but before considering the effect of these provisions, it is important to look at subsequent statutes which bear upon this matter. In 1845 (Laws of 1845, chap. 225) it was declared that the ordinance last referred to — that of 1844 — should not be amended without the consent of the legislature, except by appropriating to and for the purpose of the sinking fund additional revenue, and that it should "remain in full force until the whole of the debt created for the introduction of the Croton water into the city of New York should be fully redeemed."

The provision of section 7 (*supra*) of that ordinance, taken in connection with section 10 (*supra*), is cited by the respondent as having a material bearing upon the question before us. It is said, however, for the appellant, that so far as the ordinance (§ 7) confers power upon the commissioners to sell stock after its purchase by them, it was repealed by the Laws of 1873 (§ 102, chap. 335), which declares "It shall be lawful for the commissioners of the sinking fund of the city of New York in their discretion, and they are hereby empowered in such discretion to cancel any portion of the indebtedness of the said city held by them, which is by law redeemable from the sinking fund, and to sell any stocks and bonds which they may hold that are not payable from said fund, and with the proceeds of such sale of stocks and bonds to buy any other stocks and bonds which are payable from said fund."

We shall refer again to the clause permitting cancellation, but upon the proposition just referred to it is not material, for no act of that kind has been attempted. Nor can we give to the other branch of the sentence the effect claimed for it by the learned counsel for the appellant. The act of 1873 (*supra*, § 119) expressly declares that the ordinances of the common council of the city of New York then in force should so continue. The ordinance of 1844 was one of them. It was, as we have seen, rendered inviolable by the act of 1845 (*supra*), and we can discover no intention in the act of 1873 to derogate in any way from the power conferred by the ordinance. The

contention of the learned counsel is that all city bonds and stock are payable from the sinking fund, and as the statutes permit the sale of such only as are not payable from the sinking fund, the permission to sell, given by the ordinances, is repealed. It might be conceded that if the assumption of fact and its application be as claimed, the authority given by the ordinance and the authority given by the statute cannot co-exist. The ordinance permitting the sale of any city stock, when that redeemable at an earlier date can be purchased, while the statute takes no notice of this distinction, but allows only such stocks or bonds as are not payable from the fund, to be sold. We cannot learn from the complaint that there are no city stocks or bonds other than those payable from the sinking fund. A repeal by implication can only be presumed in a clear case, and upon the statement in the complaint we cannot say that effect could not be given to the ordinance and also to the statute. It seems apparent then that the stock of the city, when issued, represents an indebtedness of the city; while held by the commissioners it is the basis of increase by interest computed thereon, which must be regularly carried to the sinking fund, and the stock may again be put upon the market, where it becomes a valid obligation, even if it had for a time ceased to be a debt of the city. From the time of its inception then to its final redemption it is the subject of sale; at all times the basis of interest, and, in the hands of all owners save the commissioners, a part of the apparent indebtedness of the city. When then is it to be deemed paid? Although, as I have already suggested, the necessary consequence of purchase was extinguishment of the debt, we find in 1844 a prohibition against cancellation of the evidence of it, accompanied by permission, for a certain purpose, to put it again in circulation. The statute last cited, however (that of 1873), becomes very important, not only in removing the prohibition against cancellation, but as disclosing the legislative understanding as to the true condition and character of the stock while in the hands of the commissioners. By that act it was made lawful for them, without the application of any fund or the interposition of the city treas-

urer or other financial agent of the city, without new considera-
tion, in form or substance, but in their mere discretion, to
cancel, that is, to wipe out any portion of the indebtedness of
the city held by them which is by law redeemable from the sink-
ing fund, and that in view of the provisions of the ordinance
of 1844 (*supra*), includes all of it. Clearly the legislature
looked upon the stock so held by commissioners as already
redeemed or paid, and while it is difficult to see why its cancel-
lation should have at any time been prohibited, it is made
apparent by this statute that the purpose was one of form
only and not of substance. Its actual cancellation deprived it
of no efficacy, for by redemption it was already for all practical
purposes extinguished.

But notwithstanding all this we cannot overlook the fact
that if the ordinance of 1844 (§ 7) is still in force, the commis-
sioners may, in the exercise of a like discretion, sell the city
stock at any time held by them. This is permitted, however,
for a single purpose — to buy with the proceeds of such sale
other city stock redeemable at an earlier day, and the charac-
ter of the transaction is indicated by the terms on which alone
it may take place, viz.: if in the opinion of the commissioners
"such exchange shall be desirable and beneficial to the public
interest." This word "exchange" declares the nature of an
act, the result of which does not enlarge the body or amount
of indebtedness for which taxation is possible. Stock of the
State, or of the United States, may be sold. City stock may
be "exchanged" by the commissioners, and the annual report
of their proceedings must specify the disbursements, purchases,
"exchanges" and sales made by them. (§ 15 of same or-
dinance.)

The view already expressed as to the effect of purchase, and
the meaning of the word "redemption," as used in the sinking
fund ordinance, finds confirmation in the statute of 1878 (Chap.
383), which provides that "the fund known as 'the sinking
fund of the city of New York, for the redemption of the city
debt,' shall be continued, and any excess there may be in said
fund, after providing for the payment of the bonds and stocks

of said city, payable therefrom, as provided by law, shall form a fund for the payment of other bonds and stocks of said city and county, as by this statute provided," and declares that the moneys and revenues of the city, constituting the sinking fund, shall continue to be appropriated to the fund, until all of said bonds and stocks of the city shall be fully and finally redeemed. Indeed in all the statutes and ordinances relating to the sinking fund, we find the words "purchase," "redemption" and "payment" used interchangeably, evidently referring to an act which in ordinary transactions, when performed by the debtor or the agent of the debtor, operates to discharge or extinguish a debt or obligation.

The argument of the respondent has been instructive. Its object is to show that the city stocks purchased by the commissioners are held by them as an investment, to be applied ultimately indeed in payment of the city debt, but not immediately, or by the act of purchase. That by it, provision merely is made for payment of the city debt, and that until the period of final payment arrives, the stock remains a debt of the city in all respects as it was before. If that be so, the sinking fund would seem to have been established for no purpose; that although many millions of money belonging to the city have been paid out of it in order that, according to the law of its creation, "the redemption of the New York city stocks may be regularly progressing," no progress has been made. The entire debt exists, but as to part a change of creditors only. But the object of every sinking fund is to diminish the debt whose existence warranted its foundation, and this general principle lies at the foundation of the scheme provided for the city of New York. The construction we give to it cannot lead to a diversion of the fund, but to the accomplishment of its object.

It satisfies also the intent of the constitutional prohibition. That is aimed at an actual, not a theoretical indebtedness — at a substantial liability which can be discharged only by the enforcement of a tax or an assessment which, when levied, will be a charge upon the tax payer and a burden for him to re-

move — not a formal obligation which may remain as evidence of a once existing debt, but which can in no way be regarded as a present debt to be enforced, and which, if not before canceled in the discretion of the commissioners, becomes waste paper by the mere efflux of time.

We hold that the stock purchased is not a debt against the city within the meaning of the constitutional prohibition. Nevertheless payment of interest upon it may be compelled, because for that purpose the ordinance expressly enacts that all interest accruing upon the purchased stock shall regularly be carried to the sinking fund for the redemption of the city debt. It is by force of the ordinance that interest is to be credited, not by reason of the contract or the terms upon which the stock was issued. Nor could that interest or other money be applied in payment of the stock held by the commissioners. That was paid by the purchase, yet if the argument of the respondent should prevail, it must be paid again before its extinguishment.

The question, then, really comes to this: What amount would be required to pay off the city debt if it all came presently to maturity? Only one answer seems possible — $92,000,000, or so much as is equal to its bonds or stock, not including that held by the sinking fund. The theory of the respondent is that the commissioners would even then be required to exact payment from the city. We find no foundation or reason for the argument. A debt once paid has no existence, and it is impossible that taxation should be resorted to in order to meet a fanciful objection, or an obligation which by redemption is in the hands of the debtor. Such may be the apparent, it is not the real debt. The result reached by us in no respect impairs the validity, or diminishes the usefulness of the sinking fund. It will still serve the purposes for which it was created, in securing the redemption of the city stocks and the upholding of its credit.

We have not overlooked the provisions of the act of 1878, upon which much reliance is placed by the learned counsel for the respondent, especially section 4, which enacts that

" between the city and its creditors, holders of its bonds and stocks as aforesaid, there shall be, and there is hereby declared to be a contract that the funds and revenues of the city and the funds to be collected from assessments as aforesaid, by this statute pledged to the sinking fund for the redemption of the city debt, shall be accumulated and applied only to the purposes of said sinking fund, until all of said debt is fully redeemed and paid as herein provided."

It relates to the funds and revenues of the city, and to the management of the sinking fund itself, and not to the effect of purchase upon the city stock bought by its moneys. That stock can in no sense be regarded as security. Its extinguishment increases the value of the stock or city debt held by its creditors.

We are unable to agree with the learned court below upon the only question presented by this appeal. Its judgment should, therefore, be reversed. It follows that the injunction order should also be reversed, and as the point upon which the demurrer turns cannot be obviated by an amended pleading, the complaint should be dismissed, with costs, and in this court with costs of one appeal.

All concur.

Judgment accordingly.