ANTHONY KELLY and Others v. CITY OF MINNEAPOLIS and Another.[1]

December 9, 1895.

Nos. 9711—(312).

City of Minneapolis — Limit of Indebtedness — Certificates of Park Board—Sinking Fund.

Held, that certain certificates calling for the payment of money, issued by the park board of the city of Minneapolis, are not an indebtedness of the city, within the meaning of Laws 1893, c. 204, § 2, limiting the indebtedness of cities; and, further, that the amount of the bonds and money in the sinking fund of the city is to be deducted from the total amount of the outstanding bonds of the city for the purpose of determining its actual indebtedness under the provisions of this statute.

Sinking Fund Commissioners—Purchase of City Bonds.

Held, that the commissioners of such sinking fund have no authority to purchase from the city its bonds, for the fund, at the time they are offered for sale by it.

Appeal by plaintiffs from an order of the district court for Hennepin county, Smith, Pond, Russell, Jamison, Belden, JJ., denying a motion for a temporary injunction. Reversed.

*P. M. Babcock* and *J. B. Atwater*, for appellants.

Under the rule "Expressio unius est exclusio alterius," Laws 1893, c. 204, § 2, forbids the deduction of the sinking fund. McRoberts v. Washburne, 10 Minn. 8 (23); Sutherland, St. Const. §§ 325-9; United States v. County of Macon, 99 U. S. 582. The reasons for excepting bonds issued to take up other bonds and bonds issued to purchase water bonds are the same. In both cases the decisions rest on the argument that the total net debt is not in excess of the charter limit. City of Poughkeepsie v. Quintard, 136 N. Y. 275, 32 N. E. 764. Sp. Laws 1889, c. 33, is inconsistent with the act of 1893. The construction

[1] Reported in 65 N. W. 115.

of the act of 1893 contended for is inevitable in the light of previous legislation, some of the prior acts making no provision for deducting any part of the sinking fund; some providing for deduction of the bonds; and some providing for deduction of both funds and bonds. Sp. Laws 1887, c. 185; Sp. Laws 1889, c. 272; Sp. Laws 1891, c. 141; Sp. Laws 1887, cc. 128, 117; Sp. Laws 1889, c. 68; Sp. Laws 1889, c. 33. The language of the act of 1893 is so clear that it is evident the legislature intended to inaugurate a new system in respect to municipal indebtedness. It is a well settled rule of construction of grants by the legislature to corporations, whether public or private, that only such powers and rights can be exercised under them as are clearly comprehended within the words of the act or derived therefrom by necessary implication, regard being had to the objects of the grant. Any ambiguity or doubt arising out of the terms used by the legislature must be resolved in favor of the public. Minturn v. Larue, 23 How. 435. No special importance need be given to the repealing clause, as the language used is but declaratory. In such case, where it appears that it was the intent to substitute the later act, such intent operates as a repeal of the former. State v. Luther, 56 Minn. 156, 57 N. W. 464; United States v. Tynen, 11 Wall. 88; Roche v. Mayor of Jersey City, 40 N. J. Law, 257; Bracken v. Smith, 39 N. J. Eq. 169; Mersereau v. Mersereau Co., 51 N. J. Eq. 382, 26 Atl. 682.

Laws 1893, c. 204, § 4, forbids a city from purchasing its own bonds directly from itself. Hoag v. Town of Greenwich, 133 N. Y. 152, 30 N. E. 842. See, also, Coddington v. Gilbert, 17 N. Y. 489; Sickles v. Richardson, 23 Hun, 559; Neel v. Beach, 92 Pa. St. 221.

The statute of 1893 prohibits any city from incurring "any debt or liability of any kind for any purpose," in excess of the five per cent. limit. Under its provisions it is immaterial what the nature of the debt or obligation may be, or when or how payable or to be performed. If the transaction constitutes a "liability of any kind" on the part of the city, it is within the context and spirit of the prohibitive language of the statute. Sackett v. City of New Albany, 88 Ind. 473; City of Springfield v. Edwards, 84 Ill. 626; Law v. People, 87 Ill. 385; People v. May, 9 Colo. 404, 12 Pac. 838; Litchfield v. Ballou, 114 U. S. 190, 5 Sup. Ct. 820; Scott v. City of Davenport, 34 Iowa, 208. There is no similarity between the park certificates and a warrant or order drawn by the proper city officers for the payment of a specific amount of

money out of the city treasury belonging to a particular fund. And the cases holding that such warrants do not create an additional indebtedness are clearly distinguishable from the case at bar. Davis v. Des Moines, 71 Iowa, 500, 32 N. W. 470; Law v. People, supra; People v. May, supra; City of Springfield v. Edwards, supra. See Scott v. City of Davenport, supra; Litchfield v. Ballou, supra. So long as a contingency exists, however remote, by which the city may become liable for something in some way, such liability is within the letter and spirit of the prohibition. Prince v. City of Quincy, 128 Ill. 443, 21 N. E. 768; Doon Township v. Cummins, 142 U. S. 366, 12 Sup. Ct. 220; Law v. People, supra; Fuller v. City of Chicago, 89 Ill. 282; City of Springfield v. Edwards, supra; Litchfield v. Ballou, supra; People v. May, supra. The fact that the holder of the certificate is to look only to a particular fund or property does not take the matter out of the prohibition. Law v. People, supra; Mayor of Baltimore v. Gill, 31 Md. 375, 389. See Kiichli v. Minnesota B. Elec. Co., 58 Minn. 418, 59 N. W. 1088.

The language of the charter negatives the contention that if the money belonging to the sinking fund is invested in city bonds, such investment operates as a redemption, payment, or extinguishment of such bonds, since, by its express terms, the commissioners are required to sell these bonds, as they are required to sell any other security in which they have invested, to meet the outstanding obligations of the city when they mature. While in the sinking fund they constitute contingent, and, when sold by the commissioners, actual liabilities. The whole purport of the act shows the purpose of investing the money belonging to the sinking fund in these different securities to be to place it in a safe condition, where it will draw interest, and where it will be immediately available when wanted, to meet the obligations for whose payment it was accumulated. Sinking Fund Cases, 99 U. S. 700. The constitution, statutes and ordinances of New York, under which Bank for Savings v. Grace, 102 N. Y. 313, 7 N. E. 162, was decided, are so different from the act of 1893 as to render that case inapplicable. The act of 1893 prohibits the incurring of "any debt or liability of any kind, for any purpose," and its inhibition is aimed alike against certificates, as well as all other forms of indebtedness, Sackett v. City of New Albany, supra, and applies alike to generations of all kinds,

including present, as well as future. Appeal of City of Erie, 91 Pa. St. 398. See Elser v. City of Fort Worth (Tex.) 27 S. W. 739. Money in the sinking fund should not be deducted. The board of sinking fund commissioners is but a department of the executive branch of the city government. The city or the trustees are but trustees of the sinking fund, and money when placed in it does not belong to the creditors of the city. Elser v. City of Fort Worth, supra; Sinking Fund Cases, supra; City of Council Bluffs v. Stewart, 51 Iowa, 385, 1 N. W. 628; City of Waxahachie v. Brown, 67 Tex. 519, 4 S. W. 207.

*David F. Simpson,* for respondents.

The park board certificates are not an indebtedness of the city within the law of 1893. The appropriation of anticipated income does not create an indebtedness, where the warrant, order, or other instrument by which taxes levied, but not collected, are appropriated, is specifically drawn against the uncollected tax or against the fund to which the money was advanced. Tiedeman, Mun. Corp. § 189a; Fuller v. Heath, 89 Ill. 296; Law v. People, 87 Ill. 385, 400; People v. May, 9 Colo. 404, 12 Pac. 838; Davis v. Des Moines, 71 Iowa, 500, 32 N. W. 470; Hopper v. Township of Union, 54 N. J. Law, 243, 24 Atl. 387; Kingsberry v. Pettis County, 48 Mo. 207.

The bonds and cash in the sinking fund should be deducted from the total outstanding bonds. This is proper under the limitation clause in Laws 1893, c. 204. The provision of chapter 204 does not repeal or modify the charter. Contracts providing for annual payments for a term of years, which payments may be made by the current revenues levied and collected during those years, are not an indebtedness of the city within the meaning of the acts imposing a percentage limitation of the city's indebtedness. Grant v. City of Davenport, 36 Iowa, 396; City of Valparaiso v. Gardner, 97 Ind. 1; City of Corpus Christi v. Woessner, 58 Tex. 462; Smith v. Dedham, 144 Mass. 177, 10 N. E. 782; Appeal of City of Erie, 91 Pa. St. 398; State v. McCauley, 15 Cal. 430; Capital City Water Co. v. City of Montgomery, 92 Ala. 366, 9 South. 343; Crowder v. Town of Sullivan, 128 Ind. 486, 28 N. E. 94. The interest on bonds is not to be included in estimating the total indebtedness, and even without an express provision to that effect, refunding bonds are not to be considered in estimating the amount of indebtedness. Durant v. Iowa County, 1 Wool.

69, Fed. Cas. No. 4,189; Powell v. City of Madison, 107 Ind. 106, 8 N. E. 31; City of Poughkeepsie v. Quintard, 136 N. Y. 275, 32 N. E. 764, and 40 Amer. & Eng. Corp. Cas. 544. Uncollected taxes and special assessments may be regarded as available for current expenses, so that contracts for such expenses are not included within the indebtedness of the city. French v. City of Burlington, 42 Iowa, 614; City of Council Bluffs v. Stewart, 51 Iowa, 385, 1 N. W. 628. Respondents' position is sustained by Bank for Savings v. Grace, 102 N. Y. 313, 7 N. E. 162.

START, C. J. This action was brought to have a certain issue of the bonds of the city of Minneapolis of the par value of $200,000, known as "Reservoir Bonds," adjudged void, and to restrain the treasurer of the city from paying out of the sinking fund of the city any money for the purchase of such bonds for the sinking fund, pursuant to an agreement to that effect between the city council and the board of sinking fund commissioners. The plaintiffs are taxpayers of the city, and from an order of the trial court denying their motion for a temporary injunction so restraining the treasurer this appeal was taken.

The bonds were issued under the provisions of Laws 1893, c. 204, § 2 (G. S. 1894, § 1095), which forbids any city in this state to issue bonds or to incur any debt or liability of any kind for any purpose except for the purchase, refunding, or payment of outstanding bonds, in excess of 5 per cent. of the assessed valuation of the taxable property of such city according to the last preceding assessment. The plaintiffs claim that this 5 per cent. debt limit has already been exceeded by the city, exclusive of these reservoir bonds; and, further, that the board of sinking fund commissioners have no authority to purchase from the city its bonds at the time they are offered for sale by it.

1. The first question is, had the city, if the amount of the reservoir bonds be added to its debt, exceeded its debt limit at the time of the proposed sale of the bonds and the commencement of this action? In deciding this question the claim of the plaintiffs that the sum of $206,567—an alleged indebtedness of the city to the courthouse and city hall commission—should be added to the indebtedness of the city, must be rejected, for it does not affirmatively ap-

pear from the record that, if there ever was any such indebtedness, it existed at the time stated in the question. Eliminating this claim, it is sufficient to say, without going into mathematical details, that it appears from the admitted facts that, if the amount of certain park board certificates hereinafter to be noticed is not a part of the indebtedness of the city, and if the amount of the money and bonds in the sinking fund of the city is to be deducted from the total amount of the outstanding bonds of the city, the entire debt of the city, including these reservoir bonds, will not exceed its debt limit. The answer, then, to this first question involves a consideration of two subordinate questions:  (a) Are the park board certificates an indebtedness of the city, within the meaning of the statute imposing the debt limit?  (b) Is the amount of the money and bonds in the sinking fund to be deducted from the total amount of the city's outstanding and uncanceled bonds, for the purpose of determining its actual indebtedness?  We are of the opinion that this first question must be answered no, and the second one yes, and we therefore answer the original question in the negative.

2. The park board certificates to which we have referred were issued under the provisions of Sp. Laws 1889, c. 30, as amended, which provide for a board of park commissioners, and constitute such board a department of the government of the city of Minneapolis.  This board is authorized to designate and acquire land in and adjacent to the city for public parks, and its here material powers are as follows:

"The said board of commissioners, and their successors, shall have power, and it is hereby authorized, to obtain title for and in the name of the city of Minneapolis, to any lands so designated by it for the purpose of this act, by gift, devise, purchase or lease. And said board may enter into any contract in the name of said city, for the purchase of any lands to be paid for in such time, or times, and in such manner as the board may agree to; and said board may accept title to lands and give back a mortgage or mortgages in the name of said city, with or without bonds to secure the unpaid purchase price, provided, that no personal or general liability on the part of said city shall be created by any such contract, or mortgage, or bond beyond the means at the time available therefor, except the liability to pay such amounts as may be realized from benefits assessed

on benefited property on account of the lands included in such contract or mortgage. And it is hereby made the duty of said board to pay on each such contract or mortgage, an amount equal to the sum or sums so realized from such assessments; and said board shall have power to accept and receive donations of money, property or lands, for the use of the said city for the purposes contemplated in this act." Sp. Laws 1889, c. 30, § 2, as amended by Id. c. 103, § 1.

The certificates in question were given for the purchase price of land for park purposes, and their payment secured by a mortgage on the land purchased. Each certificate states that the city of Minneapolis is indebted to the payee in the sum therein named, and recites that the consideration therefor is the conveyance to the city by the payee of land for park purposes, and that the certificate is secured by a mortgage on the land sold, and that it is payable out of the funds arising from assessments made upon real estate specially benefited by the park established on the land, and concludes with these words: "It being expressly understood and agreed that there is no liability on the part of said city to pay the amount evidenced by this certificate and secured by the above-described mortgage out of any other fund than the fund above specified." No certificates issued or contracts made by the park board can be given any legal effect contrary to or in excess of the powers conferred upon the board by the statute we have quoted, and they are, in fact, substantially in accordance with its provisions. The board has no power to make these certificates a lien generally upon all the parks of the city, and the record shows that no attempt has been made to secure their payment by the creation of such a lien.

The provisions of the statute relied upon by plaintiffs to support their proposition to the contrary (Sp. Laws 1889, c. 30, § 5), refer only to park bonds issued for the purpose of obtaining money with which to acquire land for park purposes. It is admitted that such bonds are a part of the indebtedness of the city. Neither are these certificates secured by a mortgage on any portion of the property of the city previously owned by it, nor by a pledge of its revenues, as claimed by the plaintiffs. If such was the case, then their contention that the certificates are a part of the indebtedness of the city would be correct, for the statute providing a debt limit for cities cannot be evaded by the

makeshift of issuing the bonds or other obligations of the city, making them payable only from the general revenues of the city to be derived from a particular source, or by securing them upon its public buildings or other property, which, if sold to pay the obligations, must be replaced by taxation, to enable the city to discharge its governmental functions. The authorities cited by counsel for the plaintiffs fully support this proposition.

But such is not the case we are considering, for each certificate is a lien merely upon the particular land for the agreed purchase price of which it was given, not upon any property which the city previously owned. The deed, certificate, and mortgage are all one transaction, and after the mortgage is given the city has just as much interest in the land mortgaged as it had before. When the land is paid for, it will be the property of the city. If not, the certificate holder takes it on his mortgage. The debt of the city is neither increased nor diminished by the transaction. No revenues of the city which must be raised or replaced by taxation are pledged for the payment of the certificates. The statute expressly provides that the park board cannot create any personal or general liability on the part of the city by any certificates they may issue, except to pay such amounts as may be realized from assessments on property benefited on account of the acquisition of the land purchased for park purposes. In no event, nor under any circumstances, is the city liable, except as a trustee, to pay over to the certificate holder the amount actually realized from the assessments. The debt limit is measured by the assessed valuation of the taxable property of the city. How, then, can it be said that these certificates, for the payment of which the city is not liable, and for which no tax can be levied, are an indebtedness of the city, within the meaning of the statute fixing the debt limit?

3. Is the amount of the bonds and cash in the sinking fund of the city to be deducted from the total amount of its outstanding bonds for the purpose of determining whether or not it has exceeded its debt limit? The view which we take of the purpose and nature of this sinking fund renders unnecessary a decision of the question raised and discussed by counsel as to the repeal, by Laws 1893, c. 204, § 2, of the provisions of the charter of the city authorizing such deduction to be made. If this statute does not prohibit such deduction, we are of the opinion that it must be made.

It is claimed by plaintiffs that the proviso of Laws 1893, c. 204, § 2 (G. S. 1894, § 1095), under the rule, "Expressio unius est exclusio alterius," forbids the deduction of the amount of the sinking fund. This maxim is not of universal application in the construction of statutes, but whether or not it applies in a given case depends upon the intention of the legislature as indicated upon the face of the statute. Broom, Leg. Max. 662; Sutherland, St. Const. § 329. The proviso in question is in these words:

"Provided, that when bonds are issued for the purchase, refunding, or payment of other bonds of such city the bonds to be so purchased or paid shall not be considered a part of the bonds on which any city may be liable, for the purpose of determining whether the bonds so issued will increase the bonded indebtedness of any city above the limit prescribed in this act." The purpose of this proviso is obvious upon its face. It was intended to set at rest any possible question which might be raised by would-be purchasers of bonds issued for the purpose of purchasing, paying or refunding previous bonds of the city, as to their validity, which would impair their market value, and embarrass their negotiation. When this proviso is read in connection with the other provisions of the chapter of which it is a part, especially the first section thereof, which declares that the rights and powers previously granted to the cities of the state shall not be abridged or affected by the act, it is manifest that the proviso was not intended either to prohibit or to authorize the taking into account the sinking fund of a city in determining its actual indebtedness.

We are, then, to inquire as to the essential character of this sinking fund, and determine therefrom, according to general principles of law and the suggestions of common sense, whether or not the amount thereof should be deducted from the total amount of the outstanding funds of the city in order to ascertain its actual indebtedness.

Sp. Laws 1881, c. 76, subc. 5, § 13, requires the city council to make an annual levy of taxes sufficient to pay interest to become due during the next fiscal year on all bonds and debts of the city, and also to levy a further tax of one mill to pay the principal of the bonds when they become due, and forbids the application of the fund created by such tax to any other purpose.

Section 14 declares that, in order to provide for the certain payment of the bonds and debts of the city, the council are authorized to main-

tain this sinking fund, and provide for its investment and security, but have no authority to abolish it until all the debts of the city are paid, nor to divert it or any increase thereof to any other purpose, and are required to appoint a board of sinking fund commissioners to take charge of the fund. This board, with the consent of the council, may invest the fund in the bonds of the city or in certain other designated bonds. If it is invested in the bonds of the city, they are not to be canceled, but the interest thereon is to be collected, and added to the fund; and when the principal of any city bonds becomes due, such of the bonds in the sinking fund as may be necessary are to be sold, with the consent of the council, and the matured bonds paid. In case the board or council neglect or violate any of these provisions, any taxpayer or bondholder is given the right to enforce compliance therewith by suit. The substantial maintenance of this fund, in accordance with these provisions, to secure payment of the principal and interest of the bonds and debts of the city, is declared to be a part of the contract with the bondholders.

Section 22 declares, in effect, that no warrant or further appropriation on the part of the city council is required for the application of the money in the sinking fund to the payment of the bonds.

It is clear from these provisions that the money in the sinking fund which has already been raised by taxation is irrevocably appropriated to the payment of the outstanding bonds and debts of the city. If any part of the fund is invested in city bonds, they can never be disposed of, except to extinguish by payment prior maturing city bonds. When any bonds held by the sinking fund become due, they are at once a charge against the fund, and they are extinguished by crediting the amount thereof to the fund.

It is true, as counsel for plaintiffs claim, that there is no express provision in the charter providing that city bonds in the sinking fund, when they mature, shall be so extinguished; but such bonds can only be sold to pay other bonds as they become due, and the provision of the charter authorizing such sale surely cannot mean that city bonds in the sinking fund already due are to be sold to pay other bonds also due, or that city bonds purchased for the fund are to remain uncanceled indefinitely after their maturity, and a tax equal to the interest thereon levied annually, and paid into the fund. The fair inference from the law relating to this sinking fund is that, when bonds become

due, they are to be paid and canceled, whether held by the sinking fund or other parties.

It appears from the record in this case that all of the bonds held by the sinking fund are the bonds of the city, hence the amount of the bonds and the money in the fund necessarily represent an equal amount of the outstanding and uncanceled bonds and indebtedness of the city, which has already been realized from taxation to pay the bonds; and to ascertain the further amount to be raised by taxation in order to extinguish the entire indebtedness of the city it necessarily follows that the amount of the sinking fund is to be deducted from the entire amount of the apparent indebtedness of the city. The balance is its actual debt. The debt limit of the statute has reference to an actual indebtedness for the payment of which a tax must be levied, not to an uncanceled apparent liability. Bank for Savings v. Grace, 102 N. Y. 313, 7 N. E. 164.

As we have suggested, this debt limit of the statute is measured by the rate per cent. of taxation necessary to pay the entire debt of the city. This is the test. Now, it is apparent from the admitted facts in this case, that a 5 per centum tax on the assessed valuation of the city would produce a sum which, if added to the amount of the sinking fund, would exceed the amount of all of its bonds and debts, including these reservoir bonds. It follows, then, that the amount of the sinking fund must be deducted from the total apparent debt of the city to ascertain whether its actual debt exceeds the debt limit.

4. Can the board of sinking fund commissioners purchase from the city its bonds at the time they are offered for sale? We answer this question in the negative.

We agree with the city attorney that there is no statute forbidding in express words such purchase, but we are of the opinion that such a purchase is so radically inconsistent with the essential character of the sinking fund, and so destructive of the purposes to be conserved by its maintenance, that it must be held that the prohibition is necessarily implied. The city can only issue and sell its bonds by the action of its council, and the board of sinking fund commissioners can only buy its bonds by the action and consent of the council. The intention of the statute is that the council and the board shall be a check upon each other in the purchase of bonds with money in the sinking fund. The unbiased judgment and independ-

ent action of each body are essential to the safe guarding of a fund which is intended to secure the certain payment of the existing bonds and debts of the city, and which the council are forbidden to divert to any other purpose. The council cannot act for the city in selling its bonds, and at the same time consent that the trustees of the bondholders and creditors of the city, the board, may invest the trust fund in the bonds which the council desire to sell, because in such a case there can be no exercise of an unbiased and independent judgment by the council as to the propriety of such purchase by the board. To construe the law so as to authorize such a sale would make the sinking fund a debt-creating instead of a debt-paying scheme.

Laws 1893, c. 204, § 4, provides that the bonds to be issued under the act shall not bear interest at a greater rate than 5 per cent. per annum, and that they shall not be sold for less than par and accrued interest to the highest bidder, after publication of notice of the sale thereof. This implies that, if the credit of a municipality or the money market is such that its bonds will not bring in the open market par and accrued interest, they shall not be sold. Now, if a city having a sinking fund set apart for the payment of its outstanding bonds can be a bidder and purchaser of its own bonds at the original sale thereof, using the sinking fund for such purpose, it follows that, when the credit of the city or the money market is such that a 5 per cent. bond will not sell in the market for par and accrued interest, the city may sell its bonds to itself by the action of its council and its sinking fund board, in violation of the spirit, if not the letter, of the law. Or, in other words, the city council, when it cannot sell bonds of the city in the manner required by law, may consent that the board may turn over to the city the money in the sinking fund, and receive in lieu thereof a new issue of city bonds that cannot be sold in the market, whereby the sinking fund is diverted, to the prejudice of bondholders and the impairment of the credit of the city.

One of the primary objects of the law in providing for and jealously guarding the sinking fund is to maintain the credit of the city, and enable it to borrow money, when necessary, on its bonds, at a low rate of interest, and thereby lessen the burden of the taxpayers. But if the city, by the consent of its council and the action of its board of sinking fund commissioners, can help itself to the money in

the fund when its bonds are unsalable, and substitute for the money such bonds, the object of the law will be defeated, and the sinking fund become the means of facilitating an increase of the debt of the city. True, there is no claim made in this case of any want of good faith on the part of the council and the board, and it may also be true that in this particular case it would be for the advantage of the sinking fund to purchase of the city its bonds direct, before they have been negotiated; but the evils which might result from a construction of the statute permitting this to be done are serious. The purpose of the statute is to guard against the possibility of such evils. When the provision of the charter relating to the sinking fund and the statute regulating the sale of municipal bonds are considered together, it is obvious that a sale by the city of its bonds to itself for its sinking fund would be a violation of the spirit, if not the letter, of the law.

Order reversed, and case remanded with direction to the district court to grant the plaintiffs' motion for a temporary injunction.