LEVY v. McCLELLAN et al. MEYER v. SAME. FLEISCHMANN REALTY & CONSTRUCTION CO. v. SAME.

(Supreme Court, Appellate Division, First Department. May 14, 1909.)

Appeal from Special Term, New York County.

Actions by Jefferson M. Levy, David Meyer, and the Fleischmann Realty & Construction Company against George B. McClellan and others. From orders denying motions for injunctions, plaintiff in each case appeals. Orders affirmed, with leave to appeal to Court of Appeals on questions to be certified.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

R. F. Wagner and J. T. Mahoney, for appellant Levy.

D. P. Hays, for appellant Fleischmann Realty Co.

A. G. McLaughlin, for appellant Meyer.

F. K. Pendleton, Corp. Counsel, for respondents.

A. H. Walker, for Public Service Commission.

PER CURIAM. Orders affirmed, with $10 costs and disbursements in each case, with leave to appellants to appeal to the Court of Appeals on questions to be certified on settlement of the orders herein.

Settle orders on notice.

INGRAHAM, J. (dissenting). Recognizing the importance of having an early decision of the Court of Appeals upon the questions involved on this appeal, the court has concluded to affirm this order so that the question can be at once submitted to the Court of Appeals. I simply wish to indicate concisely as possible the questions as to which I disagree with the referee.

The provision of the Constitution which controls is that no county or city shall be allowed to become indebted for any purpose or in any manner to an amount which, including existing indebtedness, shall exceed 10 per cent. of the assessed valuation of the real estate of the city or county subject to taxation as it appears by the assessment rolls of the said city or county, and all indebtedness in excess of such limitation, except as now may exist, shall be absolutely void. The ques-

tions are divided into two classes: First, the amount of the assessed valuation of the real estate of the city of New York subject to taxation as it appears by the assessment roll of said city; and, second, the amount of existing indebtedness. This provision of the Constitution was inserted in the year 1874. Real estate or real property had then a settled and defined legal meaning. Property has generally been defined into two general classes, real and personal. By the Revised Statutes real estate was defined to be coextensive in meaning with lands, tenements, and hereditaments and the real property law contains this same definition. A franchise is defined to be "a special privilege conferred by government on individuals, and which does not belong to the citizens of the country generally by common right." It is clearly not lands or tenements. Hereditaments are things capable of being inherited. Certainly a personal right or privilege would not be inherited, but would go to the personal representatives, and not to the heir. The Legislature could not, I apprehend, defeat this provision of the Constitution by requiring that all personal property should be called real estate, so that property which has universally been regarded as personal property should be thereafter assessed as real estate. The provision of the Constitution is that the power to borrow should not exceed 10 per cent. of the assessed valuation of real estate as it appeared by the assessment roll of the said city. Before the adoption of the provision taxing franchises, the real property or real estate of corporations exercising public franchises was assessed, but a franchise as distinct from the real property owned by the corporation was never included in such assessment, and this was the condition of the law when the constitutional provision was adopted. Thus the rails of a railroad affixed to the street were assessed as real estate, the pipes of a gas company or water company were assessed as real estate, and the cars used for carrying passengers upon the rails were assessed as personal property; and the provisions of the Revised Statutes and of the real property law giving a definite meaning to the term "real estate" have never been changed by the Legislature, nor did the provision of the tax law under which these assessments are made change that general definition of real estate. Subdivision 3, § 2, Tax Law (Laws 1896, p. 796, c. 908), as amended by chapter 712, p. 1589, Laws 1899, provides as to whether the term "real estate" or "real property," as used in the tax law, shall include these special franchises. They were thus included within that term only for the purpose of taxation. In the case of People ex rel. Met. St. Railway Co. v. Tax Commissioners, 174 N. Y. 417, 67 N. E. 69, it was held that these amendments created a new system of taxation and brought within its range a new character of property; that the new kind of property was termed real estate just as it might have been termed personal property, or neutral property without changing its nature; that this property was sui generis, and from its nature could not be valued by local officials. It was said that this new property is real estate in name, but not in reality; that it is a mere privilege to do something in public streets and places not permitted to citizens generally, and for the purpose of taxation was denominated real estate.

The other question as to which I do not agree with the referee is as to the obligations of the city upon contract obligations which the referee finds on the 30th of June, 1908, was over $54,000,000. The referee holds that this sum is not to be deducted. As was said by the Court of Appeals in Bank for Savings v. Grace, 102 N. Y. 313, 7 N. E. 162, the constitutional prohibition "is aimed at an actual, not a theoretical indebtedness—at a substantial liability which can be discharged only by the enforcement of a tax or an assessment which, when levied, will be charged upon the taxpayer and a burden for him to remove." Accepting this situation under which hundreds of millions of dollars of obligations of the city in the sinking fund have been deducted, it is apparent that this obligation of the city to pay the amount to be paid upon these contracts is an actual indebtedness. It is true that the obligation of the city depends upon performance by the various contractors of their obligations; but, as an actual existing condition, there is no doubt but that the city will have to pay the sums represented by these contracts and provide for their payment, either by issuing bonds or by some form of taxation. It is said that, as to these unexecuted contracts, the city can break the contracts, and then would only be liable to the contractor for the amount of the contractor's profit. But even in such a case the city would have to make a contract with some one else to do the work, and, at any rate, while the contract actually exists as a valid contract, recognized by both parties as such, it seems to me that it is an existing indebtedness and within the contemplation of the Constitution prohibiting the incurring of further indebtedness. To put the question in a somewhat different aspect, suppose that 10 per cent. of the actual real estate assessment was outstanding in actual bonds and the city proposed to make a contract by which the city was to pay for an improvement which, when the improvement was completed, would obligate the city to pay a sum of money, would not the making of such a contract be prohibited by this provision of the Constitution? And would it be an answer to say that the making of this contract imposed no obligation upon the city until the contractor complied with it and, therefore, it is not incurring a debt or becoming indebted? I think that making such a contract would be looked upon as incurring an indebtedness by the city, and, after it was made, it would seem to follow that it would be an indebtedness incurred which would prevent a further contract being made until that indebtedness was discharged.

There are other questions presented in regard to the sinking fund in which I am inclined to think the referee was wrong. Thus I do not consider that the city is entitled to deduct from indebtedness under this constitutional provision bonds issued for water supply and for revenue purposes which are not included in the indebtedness to which the 10 per cent. provision applies. The sinking fund holds these water bonds, but held by the sinking fund they are not obligations against the city. It is like an individual or corporation purchasing its own obligations and holding them. They reduce the indebtedness of the city for the water supply, but they cannot reduce the other indebtedness upon which the right to borrow is limited.