### W. O. ELLIS v. THE VERNON ICE, LIGHT, AND WATER COMPANY ET AL.

### No. 990.

1. **Pleadings — General Exception.**—A general exception to the pleadings of the adverse party can not be sustained where any one of the pleas is good for any purpose.

2. **Receivership—Right of Intervening Lien Creditor to Attack.** Where a mortgage creditor intervenes in a suit wherein a receiver has been appointed, asking to have his lien preferred and foreclosed, and fails to take any steps in the trial court to vacate the receivership, but acquiesces therein, he can not be heard on appeal to question the action of the court in appointing the receiver.

3. **Same—Priority of Liens.**—Under article 1466 of the Revised Statutes, as amended by the Act of 1889 (Sayles' Civil Statutes, Addenda, article 1466, et seq.), the court may give to debts and liabilities arising during the receivership a preference lien on the corpus of the property involved prior to that of a first mortgage lien thereon.

4. **Same — Fixed Lien has Preference over Prior Unsecured Debts.**—But the court has not the right to thus subordinate a fixed lien to an unsecured debt created prior to the receivership, as the statute limits this right to judgments for causes of action arising during the receivership; and claims prior thereto are restricted to a preference lien on the moneys coming to the receiver as the earnings of the property in his hands.

APPEAL from Wilbarger.   Tried below before Hon. G. A. BROWN.

*Williams & Evans*, for appellant.— 1. The court erred in holding that an equitable lien could arise in this case, by which receiver's certificates or claims of intervenors could be preferred to the bonds of Ellis secured by first mortgage liens, this being a water, ice, and light business, and not a railway receivership.   McIlhenny v. Benz, 80 Texas, 4; Morgan v. Texas, 137 U. S., 171; Fosdick v. Shaw, 99 U. S., 235; Miltonberger v. Logansport, 106 U. S., 286; Kneeland v. Bass, 144 U. S., 544; Kneeland v. A. L. & T. Co., 136 U. S., 100; Kneeland v. Luce, 141 U. S., 509; U. T. Co. v. Railway, 117 U. S., 434; Finance Co. v. Charleston, 48 Fed. Rep., 188; Bound v. Railway, 50 Fed. Rep., 312; Trust Co. v. G. C. C. Co., 50 Fed. Rep., 481; Trust Co. v. Railway, 46 Fed. Rep., 101; Eaton v. Railway, 38 Fed. Rep., 13.

2. The court erred in finding and decreeing that the $2404.55 of the earnings of the defendant were diverted to such purpose as gave the intervenors and plaintiff a right to be paid to that extent out of the proceeds arising from the sale of the property itself.   Trust Co. v. Railway, 46 Fed. Rep., 101; Morgan v. Texas, 137 U. S., 171.

3. The court erred in finding and decreeing that the cost, expenses, salary, etc., including receiver's certificates, should be paid out of the proceeds arising from the sale of the property, as preference liens.   Noyes v. Brown, 75 Texas, 461; Carter v. Hightower, 79 Texas, 137; Bound v. Railway, 50 Fed. Rep., 312; Walters v. Trust Co., 50 Fed. Rep., 316; Morgan v. Texas, 137 U. S., 171.

4. The court erred in failing to decree that the bonds of Ellis should be first paid out of the proceeds of the sale as a first mortgage lien.   McIlhenny v. Benz, 80 Texas, 4; Fosdick v. Shall, 99 U. S., 235; Trust Co. v. Railway, 46 Fed. Rep., 101; Bounds v. Railway, 50 Fed. Rep., 311.

*Stephens & Huff*, for appellee J. B. Lockett.—1. One who intervenes in a cause must accept the case as to all previous orders made and papers filed, as they may appear at the time of intervention.   Rainbolt v. March, 52 Texas, 246.

2. The intervenor, Ellis, could not, by general exception, attack the right to appoint a receiver in this case.   The exception to the receivership did not go to the merits of the plaintiff's cause of action.   Hanchett v. Gray, 7 Texas, 551; Merrett v. Clough, 2 Texas, 582.

3. Persons who furnish labor, material, and supplies to a corporation in order to keep it a going concern, are entitled to payment out of the earnings thereof, before payment of interest on mortgage bonds or for betterments; and if in a suit to foreclose, it appears that money due

upon claims of this nature has been paid out as interest on bonds or for permanent improvement, whereby the bondholders have been benefited, the court will order an amount equal to the sum so diverted to be paid upon such claims, out of any earnings in the hands of the receiver, or failing in those, out of the proceeds of sale. McIlhenny v. Benz, 80 Texas, 1; Finance Co. v. Railway, 48 Fed. Rep., 188.

*Bradburn, Smith & Basham*, for appellees D. A. Turner et al.—The court did not err in holding that intervenors, D. A. Turner et al., whose claims were for money furnished defendant company to pay running expenses and to keep the plant a going concern, had a lien upon the earnings of the defendant company, and upon the corpus of said property, to the extent that its earnings had been diverted. Finance Co. v. Railway, 48 Fed. Rep., 188; McIlhenny v. Benz, 80 Texas, 1; Sanger v. United States, 91 U. S., 60.

STEPHENS, ASSOCIATE JUSTICE.—The assets of the Vernon Ice, Light, and Water Company, a private corporation, chartered for the purposes indicated by its name, were, on the 19th day of December, 1891, upon the application of J. B. Lockett, a creditor without judgment or lien, placed in the hands of a receiver. In February following, at a regular term of the District Court, upon the motion of Clower, Harris & Co., judgment and lien creditors who had intervened in the suit, the receivership was by order of the court continued in force. About the same time, the First National Bank of Vernon filed its plea of intervention, also praying for the continuance of the receivership. In June following, D. A. Turner and others intervened.

In July, appellant Ellis, the holder of the bonded indebtedness of the said company, amounting to about $18,000, secured by the first and only mortgage on its entire plant and assets, filed his plea of intervention, containing a general demurrer to the petitions of plaintiff and the other intervenors, a general denial, and a special plea setting up his ownership of the bonds and mortgage with power of sale; alleging default in the payment of interest, and praying a foreclosure of his prior lien, and that the sale be made through himself as trustee, or through such other person as the court might select. He also alleged a title to the lots upon which the water works plant was in part situated, derived from an execution sale made under one of the judgments in favor of Clower, Harris & Co., foreclosing an attachment lien created subsequent to the deed of trust.

There was a trial without the intervention of a jury, and the record contains the court's conclusions of fact methodically stated, but no statement of facts. Our conclusions will therefore rest upon these findings of fact.

*Conclusions of Law.*— 1. The first assignment, that there was error in overruling the general exception of appellant to the pleadings of the other parties, can not be sustained. If any one of these pleas was good for any purpose, which must be admitted, the general demurrer was properly overruled. 79 Texas, 543; 15 L. R. A., (Ga.), 637. Besides, the assignment is very general, and no proposition is submitted under it.

2. The second and third assignments complain of the court's conclusions, (1) that the appointment of a receiver at the instance of a simple contract creditor of an insolvent corporation was authorized by the third subdivision of article 1461 of the Revised Statutes; (2) that if there was error in such appointment, the same was cured by the subsequent confirmation of the appointment at the instance of Clower, Harris & Co., who were judgment and attachment lien creditors. We are of opinion, that the findings on this issue should not be disturbed, if for no other reason, because appellant failed to take any steps in the trial court to vacate the receivership. We fail to find in the record any motion or prayer on his part for such relief, and the only assault made upon the receivership by his pleadings in the court below, which we have been able to find, consisted of the following statement, incidentally made in parenthesis, "not admitting, but denying, the legality of the receivership proceedings herein." The rest of his plea seems to have contemplated the continuance of the receivership, which was supplemented by an agreed judgment to that effect, and we think he must be held to have acquiesced therein.

3. The fourth assignment, in the language of appellant, "goes to the right of the court in any case, other than a railway receivership, to fix upon the corpus of the property a lien prior to the first mortgage bonds," which right is denied by him. This position seems to us to be arbitrary, and without support in reason or authority. The ground upon which this right was denied in case of a navigation company (Bound's case, 50 Federal Reporter, 312), relied upon by appellant, would seem to require that the doctrine should be held as applicable to the water works of a city or town as to a railway. In the one case, as in the other, the interposition of sovereign power is required to secure the land upon which it is constructed. It is there laid down, that this exercise of the right of eminent domain is bestowed by the sovereign in consideration of the continued public use, which public use, as there defined, arises when the sovereign power is essential to the enterprise, and is exercised because of such use. The bondholder lends his money with the knowledge of this condition. Rev. Stats., art. 478; see also, Karn & Hickson v. Rorer Iron Co., 86 Va., 754. This question is placed beyond controversy, so far as debts and liabilities arising during the receivership are concerned, by the Act of 1889, amending article 1466 of the Revised Statutes. Sayles' Add., art. 1466. This conclusion overrules the seventh assignment also, which

reads, "The court erred in finding and decreeing that the cost, expenses, salary, etc., including receiver's certificates, should be paid out of the proceeds arising from the sale of the property as preference liens."

4. We are of opinion, however, that the sixth assignment, reading, "The court erred in finding and decreeing that the $2404.55 of the earnings of the defendant were diverted to such purpose as gave the intervenors and plaintiff a right to be paid to that extent out of the proceeds arising from a sale of the property itself," must be sustained. These claims all originated long before the receivership. It appears that there were no net earnings from the operation of the plant pending the receivership; nor does it appear that the revenues previously expended upon the improvement and extension of the plant enhanced its value; nor that the holders of these claims had been in any way prevented from collecting the same by proceedings at law; nor that the company had been allowed by the mortgage bondholder to remain in possession and operate the plant after insolvency and default; nor that it had been suddenly deprived of the control of its property, or the like.

This record presents the case of the appointment of a receiver, not at the instance of bondholders or officers of a corporation, to the incidental detriment of the favored class of unsecured creditors, but upon the application of holders of unsecured claims for supplies furnished and money advanced, who had neglected to proceed at law to collect their debts, alleging the recent insolvency of the corporation as the sole ground for appointing the receiver, and seeking thereby to acquire a preference lien. To give such claims, under the circumstances disclosed by the record, a preference lien on the corpus of the estate, it seems to us, would be to go further than any case has yet gone in subordinating a fixed lien to a floating debt. McIlhenny v. Benz, 80 Texas, 13; Railway v. Humphries, 145 U. S., 103, and cases there quoted from.

We are strengthened in this conclusion by the legislation had on the subject of receiverships just prior to the transactions involved, which seems to have made more certain the very flexible rules governing receiverships as administered in courts of equity. By the Acts of 1887 and 1889, amending and enlarging the statute on that subject, the only claims made liens on the property in the hands of the receiver superior to the mortgage lien are judgments rendered for causes of action arising *during the receivership*. Sayles' Add., art. 1466. Claims arising prior thereto are limited to a preference lien on the moneys coming into the hands of the receiver as the earnings of the property in his hands, and are last in the order of preference. Sayles' Civ. Stats., arts. 1470d, 1470e, Add., 1466. Without net earnings, therefore, no provision is made for their payment. The lien therein repeatedly declared to be superior to the mortgage lien on the corpus of the property is invariably limited to claims or

·causes of action arising *during the receivership.* The only provision for the payment of antecedent floating debts out of the proceeds of the sale of the mortgaged property in preference to the debt secured by the mortgage, is where the receiver has spent current earnings coming into his hands as such in improving the property, whereby its value has been in-·creased, and then only to the extent of the value of such improvements. Sayles' Civ. Stats., art. 1470d.

We think the Legislature must have meant something by the minute and full treatment of the subject which these acts manifest, and that the courts should be governed by their provisions. This conclusion sustains also the eighth, thirteenth, fourteenth, sixteenth, seventeenth, and eight-teenth assignments, and leads to a reversal of the judgment in so far as it gave these claims a preference lien. The other assignments are not be-lieved to be well taken, being, in effect, either disposed of or rendered ·unimportant by the conclusions already reached.

Judgment will be here rendered in favor of appellant, directing the payment of his bonds out of the proceeds of the sale of the property mortgaged, in preference to the claims of plaintiff and the other inter-venors in the court below, but following in other respects the decree there ·entered; the costs of this appeal to be taxed against said appellees.

*Reformed and rendered.*

Delivered May 10, 1893.

A motion for rehearing was denied.

Publication of this case was delayed because of an application for writ ·of error to the Supreme Court, which was refused on written opinion.