### City of Mayfield v. Phipps, et al.

(Decided March 28, 1924.)

## Appeal from Graves Circuit Court.

1. Municipal Corporations—Delegation of Power to Manage Water Works and Light Plant Authorized.—Under Ky. Stats., section 3580, a city could through its council delegate to a committee the power and right to control, operate, and manage its water works and electric light plant.

2. Municipal Corporations—Delegation of Powers Authorized.—Powers of a purely ministerial, administrative, or executive nature may be delegated by a municipal council to a committee or to some appropriate officer, though it cannot delegate to such com-

mittee the power to decide upon legislative matters properly resting in the judgment and discretion of the council.

3. Municipal Corporations—Municipality Held Authorized to Engage in Plumbing and Electrical Business.—A city operating water works and electric light plant could engage in the purchase, sale, and installation of plumbing and electrical supplies and materials incidental to the supplying of water, light, and power to its customers, and bear the expense of the same out of the income of the plant.

W. J. WEBB and S. T. BOAZ for appellant.

R. N. STANFIELD and F. B. MARTIN for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON—
Reversing.

Mayfield, a municipality of the fourth class, owns and operates both its electric light and water system for supplying light, heat, power and water to the municipality and to the citizens thereof. In 1918, it passed an ordinance providing for the control and management of the water and electric light plants. It provided for a committee of five. In part the ordinance reads:

"First. That for the purpose of controlling and operating the water works and electric light plants, there is hereby created what shall be called a water works and electric light committee.

"Second. The said water works and electric light committee shall consist of five (5) members, of which the mayor shall be one and ex-officio its chairman, one member of the committee shall be a member of the board of council, and the other members of the said committee shall be legal voters of the city of Mayfield, of the same qualification of a member of the board of council.

. . . . . . . . . .

"Seventh. The committee so created by this ordinance shall have absolute and exclusive control of the said water works and electric plants in its operation, fiscal management and regulation of rates and in every other respect. It shall provide its own rules, regulations and by-laws, and out of the revenue of the plant pay all of its operating expenses, repairs and additions that may be necessary to be made thereto, and provide a sufficient reserve fund to insure the said plant is kept in repair and good working order and provide against any emergency that may arise."

By another section of the ordinance the committee is required to report to the board of council at stated times, giving in detail the general condition of the plant, the receipts and expenditures, additions made thereto, the amount of reserve fund on hand and needed, and any surplus of said funds that may be remaining and to turn in to the city treasurer all such surplus at stated periods. Later the ordinance was amended by adding thereto the following:

"And the said water and electric light committee may, out of any profits arising in the operation of said plants, purchase and install electrical and plumbing materials to their customers, and charge therefor, and the income from the same to become a part of the general income of said plants."

Pursuant to these ordinances the electric light and water plants committee was duly appointed and installed in 1918, and since that time has been in the control and management of the two plants with apparent success.

This suit was commenced on November 19, 1923, by appellants Shaw and Orr in the Graves circuit court to enjoin and restrain the electric light and water committee from further continuing the operation and control of the said water works and the electric light plant, and to require the city of Mayfield, through its council, to take charge of and operate the said plants; and further to enjoin the said committee operating and managing the said plants from using the funds arising from the sale of electric current, light, power and water for the installation of electrical and plumbing supplies and materials to be sold and furnished to the citizens of the city and patrons generally of the plants and from engaging in the plumbing business and from selling or offering to sell supplies and material for electric lighting and plumbing.

Before the case was finally decided appellees, Phipps, Simon and Keel, filed their intervening petition asking to be made parties plaintiff, averring that they had a special interest in the controversy, for the reason that they were engaged in the plumbing and electrical business in the city of Mayfield, with large capital invested, and were also consumers of water and light supplied by the two plants, and set out the history of the acquisition of the plants by the city.

Upon demurrer the lower court upheld the ordinance providing for the creation of the water works and electric

light committee; and for its control of the plant, but declared invalid the ordinance authorizing and permitting it to purchase and install plumbing and electrical materials and supplies to its customers out of the income of the plant. The appellant, city of Mayfield, prosecutes this appeal from that part of the judgment holding the ordinance invalid wherein it authorizes the committee to engage in such business, and Shaw and Orr, appellees, have prayed and now prosecute a cross-appeal from the action of the lower court in upholding the ordinance creating the water works and electric light committee and investing it with power to operate and control the plants.

We have, therefore, two questions submitted to this court on this appeal: First, the right and power of the city of Mayfield, through its council, to delegate to a committee the operation and management of its water works and electric light plant; second, the right of the municipality, or the committee designated by it, to engage in the purchase, sale and installation of plumbing and electrical supplies and materials to its customers and bear the expense of the same out of the income of the plant.

A municipal corporation must, of necessity, conduct its business through its officers and agents. By section 3580, Kentucky Statutes, it is provided: "Where no board of public works has been established, the duties herein imposed (upon the board of works) shall be performed by the council and such other employes and agents as said council may elect or designate." Manifestly the general assembly intended to confer upon such municipalities the power to designate and appoint agents to take charge of and administer certain of the city's affairs. An electric light and water plant requires a number of employes. The board of council is endowed with power to make such rules and regulations for the government of such plants as will redound to the public good, and to arrange for the employment or appointment of agents to look after and manage the same and report the results to the council or other public authorities of a municipality. The electric light and water committee named under the ordinance passed by the council of the city of Mayfield was merely the arm of the city government acting in an administrative capacity. The acts and doings of the committee were in legal contemplation at least the acts and doings of the council when concurred in and approved by the council.

It is generally conceded that powers of a purely minister-; ial, administrative or executive nature may be delegated by a municipal council to a committee or to some appropriate officer, although it cannot delegate to such committee the power to decide upon legislative matters properly resting in the judgment and discretion of the council. 19 R. C. L. 896; 52 L. R. A. 749; 12 L. R. A. 57. We conclude, therefore, that the city council was within its rights when it provided for and named a committee for the administration of the water and light plants.

2. The concrete point for determination presented by the second question raised is, whether a municipality which lawfully owns and operates within its limits the two public utilities of a water works and an electric plant has the power, as an incident to such ownership and operation, to distribute the particular public utility product by doing the necessary plumbing, and furnishing the material therefor, to install the product and convey it into the residences of its inhabitants? The question may be further narrowed in this case to the right and authority of the municipality in the respects mentioned, as an incident to its ownership and operation of the plants, to pay for such work and material, not out of the taxes collected from the people, but out of the funds derived from its operation of the utility plants, since in this case the city is confined by the quoted amended ordinance, *supra,* to the payment for such material and labor only out of "any profits arising in the operation of said plants," which eliminates from consideration the contention made by learned counsel for appellees that the city has no right to *tax* its inhabitants for any such purpose.

We are, therefore, not now concerned with the authority of a legislature, including our own, to confer upon municipalities the right to engage in strictly *private* business in the absence of constitutional authority so to do. It might not be amiss, however, to say that an examination of recent opinions and text writers reveals the fact that in the absence of constitutional inhibition the legislature may authorize a municipality to engage in various enterprises in which individuals also engage and which have in former times been regarded and classified as strictly private business. But it will be found, and the cases expressly so state, that the business so authorized to be performed, or engaged in by the municipality, partakes more or less of a public nature, and effects some of the public purposes for which a municipality is created.

Therefore, those courts hold that if the business is such as to come within the *regulatory* power of the municipality, because of its *quasi* public nature, it may be authorized by the legislature in the absence of constitutional inhibitions to itself engage in that particular business for the benefit of. the public, and when it does so it is not performing strictly a governmental function but is exercising what the opinions denominate its right to conduct the particular business so impressed with public purposes for the public good. And so this court, in the case of Dyer v. City of Newport, 123 Ky. 203, 29 Ky. L. R. 656, following what has been said, and pointing out the distinction between strictly governmental powers of a municipality and those partaking somewhat of a private nature, said:

"But such municipalities may own property in what is termed their private as distinguished from their public capacity. Concerning such, and its contracts relating thereto, it may sue or be sued in the same way and for the same causes that a private corporation or an individual may be. Included in such property are water works and electric and gas plants for furnishing light and water to its inhabitants. It is not possible for a city to acquire property for any other purpose, or to engage in any kind of business, not incidental to its municipal capacity as an agency of government. For whether it is treated in its public or private capacity, it is always required to act alone with respect to matters legitimately pertaining to the government of its inhabitants." See also City of Louisville v. Parsons, 150 Ky. 420.

Coming now to the concrete case, we see from the above excerpt that in this jurisdiction it is competent for municipalities to own water works and electric light plants. The right of the city of Mayfield to purchase the plant here involved was upheld in the case of Benjamin v. City of Mayfield, 170 Ky. 446.

In the case of City of Henderson v. Young, 119 Ky. 224, it was in effect held that when a municipality in its private capacity owns and operates a public utility plant it possesses the same rights and powers with reference to its management and control that a private individual owner would possess. See also upon the same point, Pond on Public Utilities, section 9, pages 23 and 24; and 28 Cyc. 615, note 64. In the first reference the text says: "Under this distinction it follows that the municipal corporation

in the construction and operation of its own water works has the same powers which a private corporation would have and enjoy in the same connection on the theory that it is acting in a private business capacity rather than in the exercise of its public governmental functions, which is well illustrated by the case of Wagner v. Rock Island, 146 Ill. 139, 21 L. R. A. 519.'' Independent of those authorities it would seem to necessarily follow that if a municipality legally acquires a public utility plant with the right to operate it for the benefit of its inhabitants, it would likewise acquire as an incident thereto the right to do all the things that a private owner might do in order to furnish to the citizens the product in which he deals; and we feel sure that it will be conceded that a private individual could as owner of the utility do and perform the things herein complained of.

But the exact question has not escaped the attention of the courts. It was presented in the case of Andrews v. City of South Haven, 1916A L. R. A. 908, 153 N. W. 827, and in a well reasoned opinion it was held that a municipality owning its public utility plant possessed the right as an incident to such ownership to do the precise things attempted to be done by the city of Mayfield in this case, and in the course of the opinion touching upon that point, it was said:

"Water sent through pipes to a customer's residence or place of business is water delivered to him ready for use in its then condition. He may heat or cool it, drink or bathe in it, and make whatever use of it he desires. But electric current delivered to him at his residence or place of business as it is transmitted over the wires, in its then condition, neither affords him heat, power or light without further mediums and appliances. The statute and Constitution do not in terms limit the service to supplying the energy, but authorize the city to supply its inhabitants with water, light, heat, power and transportation. It may well be contended that furnishing to customers taking electricity the necessary devices or equipment to produce heat, power or light from the current is naturally incidental to and an implied power connected with the business of operating an electric light plant. It does not appear that the municipality in so doing is conducting the business by different methods and under other rules than those which are observed by and control private business

corporations or private individuals in the operation of an electric plant.''

The opinion refers to the case of Keen v. Waycross, 101 Ga. 588, 29 S. E. 42, as holding to the contrary; but an examination of that opinion will show that it does not do so, because the authority of the municipality in that case was *expressly* limited and confined to the furnishing of the product *at the consumers' terminals,* which was construed to prohibit the right to carry it into his residence, and to give to the municipality no greater power than to distribute the product along the streets where it could be reached and appropriated by the consumer if he desired. The subsequent case from the same court (Holton v. Camilla, 134 Ga. 560, 31 L. R. A. (N. S.) 116, 60 S. E. 472, 20 Ann. Cas. 199), held that the city had implied power, as an incident to its right to furnish pure water to its inhabitants, to manufacture ice and distribute it to its citizens. Some of the text writers make the statement that a municipality has no right to engage in the plumbing business, and cite in support of that text the Keen case, *supra,* which, as we have seen, is in fact not an authority in point for the reasons hereinbefore pointed out. The doctrine of the Andrews case was referred to and confirmed by the same court in the later cases of Wood v. City of Detroit, 159 N. W. 592; Thomas v. Board of Supervisors, etc., 182 N. W. 417, and the case in 187 Mich. 294.

Whether it is a wise or unwise policy for a municipality to carry its product from its streets into private residences and in so doing engage in a private business, is a question with which we have nothing to do, since our task is performed when we apply the existing law to the particular question as presented by the concrete facts.

Of course, we would not be understood as holding that the city, without being the owner of such public utilities, could embark in the plumbing or any other strictly private business, but in so far as that business is connected with its plant, which it lawfully owns and has the right to operate, the law seems to be clear that it has the right to perform it; but it could not either furnish material for workmen to perform the same service to an independent or privately owned plant, since its right rests solely upon its incidental power growing out of its ownership.

Upon the point raised that the water rents collected by the city are in reality *taxes* and, therefore, its council

has no right to expend them for such purposes, we refer to the note to the case of Wagner v. Rock Island, reported in 21 L. R. A. 519, wherein it is pointed out that such rents are not taxes in the usual signification of that term.

Wherefore, the judgment is reversed in so far as it overruled the demurrer to that part of the petition attacking the amended ordinance and in so far as it overruled the demurrer to the petition of the interveners, with directions to sustain the demurrer to the petition as an entirety and to also sustain it to the intervening petition, and for proceedings consistent with this opinion.