## City of Bowling Green v. Kirby.

(Decided June 24, 1927.)

### Appeal from Warren Circuit Court.

1. Municipal Corporations.—Under Constitution, sections 157, 158, municipality of third class may not incur indebtedness in excess of income and revenue provided for year without assent of voters at special election, and indebtedness must not exceed 5 per cent of assessed value of taxable property.

2. Municipal Corporations.—Ordinance of city of third class providing for extension of waterworks and issuance of bonds, pledging income of waterworks to secure payment under Acts 1926, c. 133, held not to create indebtedness of city within terms of Constitution, sections 157, 158, limiting amount of indebtedness which cities may incur, where ordinance limited payment of bonds to funds secured from income and revenue derived from operation of plant.

3. Municipal Corporations.—As general rule, obligation of city which is to be discharged from general fund in nature of special assessment does not constitute debt within meaning of Constitution, sections 157, 158.

4. Municipal Corporations.—Ordinance providing for extension of city's waterworks and issuance of bonds therefor giving bondholders statutory mortgage lien under Acts 1926, c. 133, section 7, and rights relative to segregation and application of income and providing for collection of sufficient rates and appointment of receiver in case of default, held to limit bondholders to recovery from income of waterworks system and to preclude enforcement of lien by sale of plant, in suit to enjoin issuance of bonds.

5. Municipal Corporations.—Acts 1926, c. 133, authorizing cities of second, third, and fourth class to issue bonds to purchase, establish, erect, maintain, and operate waterworks, together with extensions and necessary appurtenances thereto, held to permit issuance of bonds for enlarging or extending waterworks system, as well as for purpose of erecting new waterworks plant.

6. Municipal Corporations.—Assent of two-thirds of legal voters required to enable city of third class to execute mortgage for waterworks plant by Ky. Stats., section 3290a, was not required for issuance of bonds for extended waterworks plant, under authority of Acts 1926, c. 133, in view of provision of section 19 that no proceedings should be required for plant's acquisition except those provided by act itself.

7. Municipal Corporations.—City acting under general authority, regardless of statute, has power to enact ordinance relating to extension of waterworks plant and issuance of bonds therefor, where no legislative limitations are imposed, as operation of waterworks plant partakes of nature of private business.

8. **Municipal Corporations.**—City's operation of waterworks plant, whereby water is furnished for compensation to citizens in homes and places of business, partakes of nature of private business.

9. **Municipal Corporations.**—In conduct of business partaking of nature of private business, city may proceed as private corporation or individual, subject only to legislative limitations.

N. P. SIMS for appellant.

R. C. P. THOMAS and THOMAS & LOGAN for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Reversing.

Bowling Green is a city of the third class. It owns its waterworks plant, which was established about 1872. It is agreed that the value of the waterworks at this time is $600,000. The plant is inadequate. The city contains a population of about 12,000, and in addition thereto there are continuously in the city 3,000 students attending the various schools and colleges who are not permanent residents of the city. Originally the built-up portions of the city were confined to the valley, but in recent years it has spread over the hilltops to such an extent that the present water plant and equipment do not furnish an adequate supply of water to all portions of the city. The assessed valuation of the property in the city subject to taxation is in round numbers $9,500,000, the floating indebtedness of the city is about $40,000, and the bonded indebtedness, exclusive of school bonds, is $308,500.

Conceiving that it had the authority so to do, the governmental authorities of the city have undertaken to issue bonds to raise sufficient funds to enlarge and improve the water plant. The basis of the belief of the governmental authorities of the city that it may so issue bonds is found in chapter 133 of the Acts of the General Assembly of 1926. An elaborate ordinance carefully and aptly prepared was enacted by the city council. This ordinance has for its object the granting of authority to issue bonds in the sum of $400,000 under the provisions of the aforesaid chapter of the Acts of the General Assembly of 1926. The proceeds of these bonds, so the ordinance provides, shall be used for the construction of extensions and improvements to the water plant of the city. It provides for the denomination of the bonds, rate of interest, dates of maturity, the form of the bonds, and such other details as make definite and certain the terms of the bonds and the authority for their issual.

Before entering into a consideration of the contemplated improvements, the city procured the services of a competent engineer who made a report to the city showing the character of work required to bring the waterworks plant up to the standard as contemplated by the arrangements and the cost thereof. The city has made arrangements to issue bonds in the sum of $309,000 to carry on the work.

For the payment of the bonds and the interest thereon, the income and revenues from the waterworks plant of the city are set aside into a separate and special fund to be used for that purpose; and in maintaining the plant 45 per cent of the income and revenue shall be applied to the operation and maintenance of the plant; 10 per cent of the income and revenue shall be set aside as a depreciation fund to be used in making good any depreciation in the plant; 45 per cent of the income and revenue shall be set aside in the treasury of the city and held for the purpose of paying the principal and interest of the bonds authorized to be issued. The ordinance shows on its face that the city council found that these percentages of the income would be sufficient for the purposes contemplated. As long as any of the bonds are outstanding the water rates shall be reasonable and just, taking into account and consideration the value of the waterworks, the cost of maintenance and operation, the necessary allowance for depreciation, and an adequate return on invested capital. The city shall also pay a rate that is reasonable and just for the services furnished it by the water company. The city binds itself not to sell, lease, or dispose of the waterworks plant or any extension thereto until all the bonds authorized shall have been paid in full or until arangements have been made for the payment of such bonds in full. The city agrees to maintain and operate the waterworks plant and to charge and collect reasonable compensation for the service rendered by the plant. A statutory mortgage lien is granted as provided in chapter 133 of the Acts of the General Assembly of 1926, and this statutory mortgage lien shall take effect immediately upon the delivery of any bonds authorized to be issued under the provisions of the ordinance. Any bondholder may institute a suit in equity or at law to protect the statutory mortgage lien given by ordinance and may further enforce and compel performance of all duties required by the ordinance, including the making and collecting of suf-

ficient rates, the segregation of the income and revenue and the application thereof in accordance with the provisions of the ordinance. Any bondholder may in case of default in the payment of the bonds or the interest thereon have a receiver appointed to administer the waterworks plant on behalf of the city with power to charge and collect rates sufficient to provide for the payment of any bonds obligations outstanding against the waterworks plant and for the payment of the operating expenses. All of these provisions are found in the ordinance with many others. Briefly stated, the ordinance authorizes the city to issue bonds to the amount of $400,000 for the purpose of constructing an extension to the waterworks plant, and pledges the income in part from the operation of the waterworks plant to the payment of the bonds so issued.

The appellee filed his petition seeking an injunction to prevent the issual of the bonds, and the lower court upheld his contention and enjoined the city from carrying out its plans in relation to this project. Appellee has filed an exhaustive brief in which he urges numerous grounds in support of the judgment of the lower court and in opposition to the validity of the ordinance. His points may be summarized as follows: (1) The issual of the bonds creates a debt in excess of the provisions of both section 157 and section 158 of the Constitution of Kentucky; that no election was held authorizing the indebtedness, and, even if an election had been held, the indebtedness would be invalid as it is in excess of the amount authorized by section 158 of the Constitution. (2) Chapter 133 of the Acts of the General Assembly of 1926 does not allow the common council to mortgage the waterworks plant or to pledge the income for the purpose of raising funds to improve or extend the waterworks system; that if the aforesaid chapter allows an indebtedness to be incurred in excess of the constitutional limitations, it is unconstitutional and void. (3) The common council may not mortgage or incumber the waterworks property without the assent of two-thirds of the total number of legal voters in the city voting at an election held for that purpose as is required by section 3290a, Ky. Stats. (4) If the mortgage lien should be enforced the purchaser of the waterworks plant would be authorized to conduct the business of furnishing water without the necessity of procuring a franchise as

provided in section 164 of the Constitution of Kentucky, and for this reason the ordinance is invalid. (5) The ordinance attempts to exempt the bonds to be issued from taxation, and, if they are treated as municipal bonds, they would become a burden on the taxpayers of the city and thereby increase the indebtedness of the city beyond constitutional limitations. (6) Chapter 133 of the Acts of the General Assembly of 1926 and the ordinance enacted by the common council are against the public policy of the state.

It is admitted at the outset that a municipality cannot issue bonds or contract a debt in excess of the income and revenue provided for the year in which the debt is created without the assent of the qualified voters thereof at an election to be held for that purpose. This has been often held in construing section 157 of the Constitution. It is admitted that $309,000, the amount of bonds which the city proposes to issue, is in excess of the income and revenue for the present fiscal year. It has also been written by this court many times in construing section 158 of the Constitution that a municipality of the third class may not become indebted in excess of 5 per cent. of the assessed value of the taxable property in such municipality with certain exceptions not necessary to name here. It is also admitted that the amount of bonds proposed to be issued when added to the present indebtedness of the city will bring the total amount to a sum in excess of 5 per cent. of the assessed value of the taxable property. It needs no argument, therefore, to convince us that the main question for determination is whether the indebtedness created as proposed in the ordinance is a debt of the city within the meaning of section 157 and section 158 of the Constitution. If it is such an indebtedness it follows as a matter of course that the issual of the bonds should be prohibited as was done by the lower court, but if it is not such an indebtedness, then other questions must be determined.

If the bonds are issued they are not the obligations of the municipality as a corporate entity. No tax can be levied to pay either the bonds or the interest thereon. The ordinance carefully provides that the bonds and the interest must be paid out of the income from the operation of the waterworks plant. If the debt cannot be discharged in that manner, then it cannot be discharged at all so far as the municipality in its corporate capacity is concerned. There is no power given to impose a tax on

the property within the city to discharge the obligations: If the city cannot be compelled to pay the debt it is not an indebtedness falling within the provisions of either section 157 or section 158 of the Constitution. It is the general rule that an obligation which is to be discharged from a special fund in the nature of a special assessment is not a debt within the meaning of these sections. Assessments for street improvements or the construction of sewers or for other public improvements to be paid for by the abutting property owners is not a debt of the municipality within the meaning of the aforesaid sections of the Constitution.

Appellee relies on the case of City of Joliet v. Alexander, 194 Ill. 457, 62 N. E. 861. In that case it was held that where a municipality borrowed money and secured the lender by a mortgage on the waterworks plant of the city, it was a debt of the city. This case is based on the reasoning that if the debt is not paid the mortgagee may foreclose and cause the property to be sold. The ordinance in the case provided for the mortgaging of the waterworks plant to secure the payment of the debt, and provided for a foreclosure and sale in the event there should be default in the payment of the debt, and that if a sale should be made that the city should be deprived of the property for a term not exceeding 50 years. He also relies on the case of Lesser v. Warren Borough, 237 Pa. 501, 85 A. 839, 43 L. R. A. (N. S.) 839. This is another case where the court held that it was an evasion of the constitutional limitations in the Constitution of that state to borrow money under a contract that the municipality should not be liable for its repayment, and providing that the lender must look solely to the property pledged as security. Another case is that of Browne v. Boston, 179 Mass. 321, 60 N. E. 934. That was another case where the debt was to be secured by a mortgage on property which was to be acquired by the city. There are other cases to the same effect. Leonard v. City of Metropolis, 278 Ill. 287, 115 N. E. 813.

In each of the cases cited the mortgagee was given the right to foreclose its mortgage against property belonging to the city, and because of that fact it was held that the city might be compelled to pay the debt by surrendering property which belonged to it, and for that reason it was the debt of the city, as much so as if there might have been a remedy by compelling the city

to pay the debt with money collected by taxation. Indeed there could be no great difference. In one case the city would be compelled to pay with its property and in the other it would be compelled to pay with the money obtained through taxation. If the property which would have to be used to pay the debt had previously been obtained by taxation, it would be a payment of the debt by the municipality. Such an indebtedness is an indebtedness of the municipality within the meaning of constitutional provisions prohibiting indebtedness beyond a certain sum.

There is another line of cases which appear to us to be more in point in the consideration of the instant case. In the case of Schnell v. City of Rock Island, 232 Ill. 89, 83 N. E. 462, 14 L. R. A. (N. S.) 874, it was held that the city might acquire a system of waterworks by pledging the income from the operation of the waterworks until the indebtedness should be discharged. Such a debt was held not to be a debt of the city. In the learned brief filed by counsel for appellee we find a substantial admission that the bonds to be issued would not be a debt against the city within the meaning of section 157 and section 158 of the Constitution if the income from the extension of the waterworks could be separated from the other income and applied to the payment of the debt. It is insisted, however, that if the obligation is to pay for the extension with the income from the entire waterworks, it is an obligation to pay with other funds not created by the construction of the extension. Counsel for appellee did not pursue their reasoning far enough or they would doubtless have reached the conclusion that the payment of the bonds proposed to be issued out of funds derived from the operation of the waterworks is permissible, and is not the creation of a debt within the meaning of the constitutional limitations.

In the case of Fox v. Bicknell, 193 Ind. 537, 141 N. E. 222, the city had purchased an independent waterworks plant and mortgaged it as security for the bonds issued to obtain the money with which to pay for it. The bonds were to be paid out of the income from the plant and were secured by a statutory mortgage on the plant. It was held that the bonds did not create an indebtedness prohibited by constitutional limitations. It was not an indebtedness, so the court held, which affected the taxpayers of the municipality as such, and the enforcement

of the statutory mortgage lien did not deprive the municipality of property which it had previously owned.

The case of Winston v. City of Spokane, 12 Wash. 524, 41 P. 888, is well in point. In that case the city issued bonds to pay for an extension to the waterworks plant and pledged the income from the waterworks plant as a special fund to retire the bonds. The court held that the bonds did not create a debt prohibited by the constitutional provisions, as the general funds of the city could not be made liable for the payment of the debt.

The case of Griffin v. City of Tacoma, 49 Wash. 524, 95 P. 1107, is another case where the court held that the pledging of the receipts from a water company to pay bonds issued for the improvement of a plant was legal, as the bonds were not a debt within the meaning of constitutional provisions.

The case of Brockenbrough v. Board of Water Commissioners of City of Charlotte, 134 N. C. 1, 46 S. E. 28, appears to be out of harmony with other cases on the same question. The North Carolina Supreme Court held in that case that the issual of bonds by the city and the mortgaging of the waterworks plant did not create a debt within the meaning of the Constitution, although the waterworks plant might be taken in satisfaction of the debt. It is not necessary for us to go that far, and we deem it unnecessary to determine that particular point in this case.

The general rule that an obligation payable out of a special fund is not a debt within the meaning of constitutional provisions prohibiting indebtedness is well stated in 19 R. C. L. section 281, p. 985:

"It is generally held that a limitation upon municipal indebtedness is not violated by an obligation which is payable out of a special fund, if the municipality is not liable to pay the same out of its general funds should the special fund prove insufficient, and the transaction by which the indebtedness is incurred cannot in any event deplete the general resources of the municipality. But the mere fact that a special fund is created for payment is not enough to make the obligation valid. The creditor must look to the fund alone for his recompense; and if the municipality is liable generally, an indebtedness is created within the meaning of the debt limit provisions. It is generally held that contracts for

local improvements, the cost of which is to be borne wholly by the property benefited, form no part of the indebtedness of the municipality within the meaning of the debt limit provisions, because the assessments were not a resource of the municipality unless the local improvements were constructed, and the means of payment arise out of the transaction which created the indebtedness. So also when the receipts from a municipal water supply are pledged to meet an indebtedness incurred in establishing the waterworks, and the creditor has no right to look beyond this source for payment, it has been held that there is no indebtedness in the constitutional sense.''

It was so held in the following cases: Quill v. Indianapolis, 124 Ind. 292, 23 N. E. 788, 7 L. R. A. 681; Laporte v. Gamewell Fire Alarm Tel. Co., 146 Ind. 466, 45 N. E. 588, 35 L. R. A. 686, 58 Am. St. Rep. 359; Kelly v. Minneapolis, 63 Minn. 125, 65 N. W. 115, 30 L. R. A. 281; Vallelly v. Park Commissioners, 16 N. D. 25, 111 N. W. 615, 15 L. R. A. (N. S.) 61.

There are many cases announcing and approving the doctrine that a city does not create an indebtedness by obtaining property to be paid for wholly out of the income thereof. It is generally held, and, so far as we have been able to ascertain, there is no exception to the holding, that the pledging of water receipts for the construction of waterworks and their transfer from the general to a special fund does not create a new indebtedness within the meaning of the Constitution. This rule does not apply unless the property pledged or mortgaged is the only property liable for the satisfaction of the obligation. If the creditor may compel the city to pay the indebtedness in some way other than by the special fund, an indebtedness is created within the meaning of the debt provisions of the Constitution.

We have no difficulty in reaching the conclusion that the bonds which it is proposed to issue are not debts within the meaning of the Constitution, if they are to be paid out of the income and revenue derived from the operation of the waterworks plant. If the waterworks system could be taken to discharge the debts, then the bonds would probably create a prohibited indebtedness.

This brings us to a consideration of the question of the meaning of that provision of the ordinance which

declares that the bondholder shall have a statutory mortgage lien for the security of the bonds. Section 7 of chapter 133 of the Acts of the General Assembly of 1926 allows any holder of the bonds, or of the coupons, to institute a suit either at law or in equity to protect and enforce the statutory mortgage lien which is conferred by the act itself. This section gives to the bondholder the right to "enforce and compel performance of all duties required by this act, including the making and collecting of sufficient rates, the segregation of the income and revenue, and the application thereof." The ordinance does not give the bondholder the right to enforce the mortgage lien by sale of the property, but does give him the right to compel performance of all duties imposed upon the city by reason of the issual of the bonds even to the extent of authorizing the appointment of a receiver to operate the waterworks system. Under the ordinance the bondholder cannot enforce his lien and compel a sale of the waterworks plant. He may compel the city to impose a water rate which will be sufficient to bring in sufficient income to pay the interest on the bonds and retire them in accordance with the provisions of the ordinance. The statutory lien which is given by the aforesaid act and by the ordinance is not a meaningless expression. The bondholders have a lien on the income, and in the event the city should decide to sell its waterworks system the bondholders would have a lien on the proceeds of the sale to satisfy the bonds. The city cannot place another mortgage on the property which would take precedence over the statutory mortgage declared in favor of the bondholders. There are any number of cases holding that while a water company has the power to mortgage its property the rights of the mortgagee will be subordinate to the public exigencies. State v. Topeka Water Co., 61 Kan. 547, 60 P. 337; Ellis v. Vernon Ice Co., 4 Tex. Civ. App. 66, 23 S. W. 856. It has also been held that a mortgage bondholder is bound at his peril to ascertain the terms of the ordinance authorizing the issual of the bonds in cases where the waterworks system of a city has been mortgaged. Ill. Trust & Sav. Bank v. Pontiac, 212 Ill. 326, 72 N. E. 411.

In the event there should be default in the payment of interest or principal of the bonds which are to be issued, the mortgagee would have no remedy except to look to the income from the waterworks system. He could

compel the imposition of a reasonable water rate, but the rate could not be made unreasonably exorbitant. He could cause the property to be placed in the hands of a receiver and operated for his benefit until his debt is satisfied. He cannot enforce his lien and sell the waterworks system. The city may sell its waterworks system and discharge the indebtedness if it should desire to do so, or if it should become necessary to do so, but of course the bonds could be paid only as they fall due in accordance with the provisions of the ordinance.

It is urged that chapter 133 of the Acts of the General Assembly of 1926 does not authorize a city to issue bonds to raise money to enlarge or extend its waterworks system, but applies only to cities desiring to erect a new waterworks plant or to acquire waterworks when it has none. The construction of the act urged by appellee is too narrow. The act is broad enough to allow the city of Bowling Green to do that which it has in contemplation.

It is urged that section 3290a, Ky. Stats., prohibits a city of the third class from executing a mortgage on its waterworks plant without the assent of two-thirds of the legal voters of the city voting at an election held for that purpose. That section is the act of 1910 (Acts 1910, c. 91), and the purpose of the General Assembly was to prohibit the sale of waterworks without the assent of the voters of the city. Section 19 of the Acts of 1926 first contains the provision that the act does not alter, amend, or repeal any other statute, but it also provides that the purpose of the act is to create an additional method for the acquisition of waterworks, and it must be held that the provision as to the repeal of no other statute means no other statute relating to the acquisition of waterworks. The last provision in the aforesaid section contains the plain provision that no proceeding shall be required for the acquisition of any waterworks under said act by the issuance of bonds thereunder except such as are provided by the act itself. While the General Assembly in 1910 provided that the waterworks of a city of the third class could not be mortgaged without the assent of the voters, the General Assembly of 1926 provided that it might be done without first obtaining the assent of the voters. To that extent the act of 1926 modifies the act of 1910.

We might leave the act of 1926, except in one particular, out of consideration, and still find authority for

the municipality in this case to do what it has planned. Treating the act of 1926 as having repealed so much of the act of 1910 as requires the assent of the voters before municipal authorities may mortgage a waterworks plant, it is no longer necessary to have such assent. Every city has its governmental functions and in addition thereto certain activities which partake of the nature of a private business conducted by the municipality for the benefit of its citizens. The operation of a waterworks plant whereby water is furnished for a compensation to the citizens in their homes and in their places of business partakes of the nature of a private business. In the conduct of such a business the city may conduct it as a private corporation or as an individual subject only to legislative limitations. This court has so held, as is shown by the case of City of Mayfield v. Phipps, 203 Ky. 532, 263 S. W. 37, and the authorities therein cited. Under the general authority conferred by the Legislature when it allowed a city to engage in such business, the city of Bowling Green through its governing authorities may have issued bonds and pledged the income and revenue from its waterworks system in payment. The city acting under its general authority, or under the authority of the act of 1926, was within its legal rights and powers in enacting the ordinance in controversy.

Judgment is reversed and cause remanded for proceedings consistent with this opinion.

Whole court sitting.